HON. SAMUEL McGOWAN, "        "

---

## MAULDIN v. CITY COUNCIL OF GREENVILLE.

1. If the point, that an action by taxpayers to restrain a municipal corporation from issuing bonds can be maintained only in the name of the State on the relation of the complainants, is not waived by failing to urge such objection by answer or demurrer, the court will add the necessary formula at any stage of the case, as the State never refuses the use of its name in such cases.

2. Individual taxpayers of a municipal corporation may maintain an action in the name of the State, on their relation, to restrain unauthorized acts by the municipal authorities, but they may also, without alleging special damages to themselves individually, sue in their own names in equity, to enjoin the contemplated illegal action.

3. After a city, under special acts of the legislature, had incurred a bonded debt of $70,600, for aiding railroad construction, a new charter was granted which limited its power "to borrow money for the public

use of the corporation by issuing bonds for an amount not exceeding
$100,000," and the city council were directed "never in any form to
make the city liable for exceeding that amount in the aggregate."
*Held*, that this power to borrow money and issue bonds was exclusive
of the pre-existing indebtedness.

4. Where a city has power under its charter to purchase and hold pro-
perty, real and personal, and to establish such ordinances respecting
the streets and police department as shall appear necessary for the
security and convenience of said city and for preserving life and pro-
perty therein, and for securing the peace and good government of the
same, the city has the express power to purchase, and implied power to
operate, an electric light plant, so far as it is used for lighting the
streets and public buildings of the city; but so far as it is used for
furnishing light to private residences and places of business at a com-
pensation, it is not for the public use of the corporation, and therefore
its purchase and maintenance is to that extent *ultra vires*.

Before HUDSON, J., Greenville, June, 1889.

This was an action by W. L. Mauldin and four others, citizens
and taxpayers of the city of Greenville, against its city council
to restrain the issue of municipal bonds. The Circuit decree was
as follows:

The plaintiffs, as citizens and taxpayers of the city of Green-
ville, have instituted this action to restrain the city council from
purchasing and operating an electric light plant to light the
streets and public buildings of the city, and from using the same
for lighting private residences and places of business. They also
asked to enjoin the council from issuing bonds of the corporation
in payment of said plant. The grounds upon which the relief is
asked are as follows, viz.: First. Because the city charter confers
no authority on the council to purchase this machinery, nor to
expend money to light the streets and public buildings. Second-
ly. Because the power of the city council to borrow money for
the public use of the corporation has already been exhausted, and
that to issue bonds to pay for this plant would be *ultra vires*.
Third. Because seventy-five cents on the one hundred dollars of
the assessed value of real and personal property of the corpora-
tion is the limit of taxation fixed by the charter, and this enter-
prise will necessarily force the council to exceed that limit, and
thus increase the burden of the plaintiffs and all the taxpayers.

Fourth. Because the purchase includes a costly engine and dynamos for producing incandescent lights for the interior of private residences and places of business, and there is no authority conferred on the council by the charter to purchase and operate an electric plant for this purpose. Such, briefly and substantially, are the grounds on which the plaintiffs ask relief or injunction.

Upon the trial of the cause they introduced in evidence the contracts made and entered into with the Brush Electric Company and the Ball Engine Company, the execution of which was admitted by the defendant. They also put upon the stand the city treasurer and keeper of the minutes to prove the correctness of the resolutions set out in their complaint. To prove this, the witness referred to the minute book of the council. He was also interrogated as to the value of the property owned by the city, real and personal, and the amount of outstanding bonds of indebtedness. The total property of the city he gave as $31,088.-88, and the total bonded debt as $98,600, of which $60,000 of these bonds represented subscriptions to railroads under special acts of the legislature long anterior to the charter of 1885, and the larger part of this bonded debt for railroad subscriptions antedated the charter of 1880. Upon the cross-examination of this witness the defendant counsel interrogated him as to other resolutions of the city council regarding the contract in question, and had him refer to them in the book. The plaintiff adduced a good deal of other testimony as to the current expenses of the city, and as to the nature, character, merits, and cost of the electric light plant, its construction, erection, extent of wire, number and location of the arc lights, the number and location of the incandescent lights, the probable cost of operating, &c., the details of which it is needless to state here, except to say that the entire cost of the plant, including engine, is put at about $21,000, and the entire annual cost of operating it, including interest, wear and tear, depreciation, &c., is estimated at from $8,500 to $10,000.

At the close of the plaintiff's case the defendant offered no testimony, and claimed the right to open and reply. This claim was resisted by the plaintiffs upon the ground that the defendant had put in evidence additional resolutions of the city council on

the cross examination of the city clerk.    I sustained the position
at first, but upon reflection I reversed my ruling upon the ground
that the minute book was in evidence on  examination in chief of
the plaintiffs' witness, and  that the defendant, on cross-exami-
nation, had a right to the further use of the book to bring to the
notice of the court  other  resolutions of  the council in reference
to the same contract.    To the defendant, therefore, was awarded
the right to open and reply, because it had offered no testimony,
but relied solely upon what had been testified to by the witnesses
for the plaintiffs upon their examinations in chief and upon cross-
examinations.   If a book containing the proceedings of the coun-
cil is put in evidence to verify a part, it can be made evidence
on cross-examination as to other parts of  the  proceedings in re-
gard to the same subject matters of contract.   The answer of the
defendant counsel fully responds to the allegations of the com-
plaint, and denies all the material allegations which charge con-
duct *ultra vires.*

The defence also moved orally upon the trial to  dismiss the
complaint, because it does not state facts sufficient to constitute a
cause of action, and this motion was  argued in  connection with
the argument upon the merits.   The cause was argued with much
earnestness, zeal, and learning on  both  sides, and a great array
of authority was produced upon all the points involved.   In this
I do not propose to  follow the example of the learned counsel,
because I think that the case depends mainly upon the plain lan-
guage of the charter and the undisputed testimony.   With these
before us, and aided by a few well settled principles of law and
simple rules of construction, a conclusion is reached without much
difficulty; certainly without the necessity of a great deal of re-
search.   I take pleasure in saying, however, that the thorough
research and the exhaustive arguments of the cause on both sides
have greatly simplified the matter, and have relieved me of the
labor of investigating all of the vast array of legal authorities.

I will first consider the motion to dismiss the complaint, some-
times called, but erroneously, an oral demurrer.   A demurrer is
a pleading, and, like all pleadings, must be in writing.   A notice
to dismiss for want of jurisdiction, or because the complaint does
not state facts sufficient to constitute a cause of action, may (if

not pleaded) be made by way of objection orally, at the trial, and when so made is a motion and not a demurrer. Does the complaint state facts sufficient to constitute a cause of action ? It is by five taxpaying corporators, and alleges no act, or threatened act, of the city council which will inflict any damage upon them, except what will be suffered by all the citizens alike. The action is not in the name of the State, or upon the relation of the plaintiffs, nor by and in the name of the attorney general on behalf of all the corporators. It does not seek to restrain the collection of an illegal tax, nor the imposition of such; but simply seeks to enjoin the city council from purchasing property and issuing bonds therefor with authority of law, and which may result in an increase of taxation. At the same time the complaint shows on its face that the council cannot assess by law a greater tax than seventy-cents on the one hundred dollars of taxable property, and is not threatening so to do: If the rate of taxation is hereafter increased, it must be done by the legislature, and not by the city council. No special damages whatever to the plaintiffs is alleged, and to sustain the complaint we are obliged to hold that any one or more corporators can bring an action in the Court of Equity against a city council and secure a standing in court by the simple charge that in some act, or proposed act, the said council is exceeding its authority, and may thereby inflict damage upon all the corporators, without alleging any ground of equitable relief special to the plaintiffs.

In New York the rule is well established "that resident citizens or taxpayers of a municipal corporation cannot, as such merely, either on their own behalf or on the behalf of themselves and all others having a like interest, maintain a suit to restrain or avoid corporate acts alleged to be illegal. Such illegal acts are considered to affect the whole public, and the public by its authorized public officers must institute the proceedings to prevent or redress the illegal act, unless a private person is threatened with or suffers some peculiar damage to his individual interest; that is, some damage distinct from every other inhabitant, in which case he may obtain his bill for injunction or for relief in his own name." 2 Dill. Mun. Cor., § 920 (3rd edit.). The New York cases referred to as leading on this question are *Doo-*

*little* v. *Supervisors of Broome County*, 18 N. Y., 155, decided in 1858; and *Roosevelt* v. *Draper*, 23 N. Y., 318, decided in 1861. A like doctrine is established in Massachusetts and others of the States of the Union; but in an able review of the decisions of the highest courts of many of the States, including recent decisions of the Supreme Court of the United States, Judge Dillon contends that the weight of authority is in favor of the resident taxpayer's right to apply to a Court of Equity in his own name and as taxpayer merely, to restrain a municipal corporation from exceeding its chartered powers, and thus doing acts calculated to injure all corporators. In England such actions are brought by an attorney for the crown in his own name, or on the relation of a citizen, and such has been the position in South Carolina and the older States of the Union, and it is difficult to find higher authority than the Appellate Courts of New York and Massachusetts.

I am unwilling to depart from what I regard the practice and doctrine of our own courts and the able courts above named, and to adopt a rule which has for its support chiefly the plea of convenience and liability. Nor do I believe that the rule approved by Judge Dillon, and which he claims to be the prevailing rule of jurisdiction, will, when applied to the case in hand, sustain the complaint of the plaintiffs. In all cases like the present, the fundamental inquiry is, whether any ground for suitable relief appears. If not, the complaint will be dismissed; it matters not whose suit, or in whose name it is brought, whether in the name of the State *ex relatione* the citizen, or by the attorney general, or by the citizen as a taxpayer merely. Because, if there be a plain and adequate remedy at law by prohibition or any established legal writs and remedies, equity will not interfere. If the complaint states good ground for equitable relief, and injury complained of is peculiar to none, but common to all the citizens, then the action must be in the name of the State *ex relatione* the taxpayers, or in the name of the attorney general. The individual taxpayer, as such merely, can obtain a standing in court only by alleging and proving that the illegal act complained of will inflict damage special and peculiar to himself. This doctrine is supported by reason and principle, and is founded in wisdom.

By it municipal corporations are saved from the danger of a multitude of vexatious suits by corporators in their individual names, whilst the rule contended for by the plaintiffs has for its strongest plea that of convenience.

I am of opinion, therefore, that the complaint does not state facts sufficient to constitute a cause of action, in that it fails to set forth wherein or whereby the alleged illegal acts of the city council will inflict upon the plaintiffs damage peculiar to them and not common to all corporators; and hence, that it should, on this ground, be dismissed, and I might also add that the complaint fails to allege that the plaintiffs are without adequate remedy at law.

But coming to a consideration of the case upon its merits, I find that the allegations of illegal acts by the city council are not sustained.

First. It is contended that the city council has no authority to expend money in lighting the streets and public buildings, and no authority to purchase this electric plant. By section 12 of the charter, granted December 22, 1885, it is enacted that the city council of Greenville "may purchase, hold, possess, and enjoy to them and their successors in perpetuity, or for any term of years, any estate, real, personal. or mixed, and sell, lease, alien, and convey the same, provided that the same shall not at any time exceed the sum of one hundred thousand dollars. And the said city council shall have full power and authority to make and establish all such rules, by-laws, and ordinances respecting the roads, streets, markets, and police department of said city, and the government thereof, as shall appear to them necessary and requisite for the security, welfare, and convenience of said city, for preserving health, life, and property therein, and securing the peace and good government of the same, and may fix and impose fines and penalties for the violation thereof." ·

Now, the evidence, uncontradicted, shows that all the property, real, personal, and mixed, owned by the city, outside of this electric plant, and the buildings and grounds where it is founded, is less than $30,000, and that the addition of the new purchases complained of will make the total value of city property about $50,000. It will scarcely be denied that the peace, security, and

good government of the people of a city requires that the streets and public buildings should be lighted at night. It is an essential police regulation, and unless forbidden by the charter, it is the duty of the city government to have this done; and to do it efficiently it is well that the city should own the plant and machinery, if permitted by the charter to do so. In this 12th section is conferred the express authority to purchase such property and the authority duly to use it for the public good. Further discussion of this question is unnecessary.

But it is contended, secondly, that there is no authority conferred in the charter upon the city council to borrow money by issuing bonds to pay for this plant and machinery. Section 31 of the charter provides that the said city council shall have power to borrow money for the public use of the corporation, by issuing from time to time, as occasion may require, the bonds of said corporation, bearing interest at a rate not exceeding seven per centum per annum, to be paid semi-annually, for an amount not to exceed $100,000. It is evident that the total bonded debt of the city is now $98,600, of which amount about $60,000 represents subscriptions to the Atlanta & Charlotte Air Line R. R., under the provision of the act of 1868, and to the Greenville & Laurens R. R., under the act of A. D. 1878. These bonds were issued in payment of subscriptions to the stock of railroad companies made under and by virtue of special authority conferred by these acts, and could not have been made under and by virtue of powers conferred by any charter of the city in force at the time of these transactions. It is not pretended that these charters conferred power to issue bonds to pay for subscriptions to railroads. These bonds were not issued "to borrow money for the public use of the corporation," as provided in the 31st section of the present charter above quoted; nor to "pay the extraordinary expenses of the city," as was provided in section 32 of the charter of 1880.

Bonds issued for railroad stock do not come under either of the classes of bonds contemplated in the two charters. The acts authorizing the city to subscribe to the stock of these railroad companies did not limit the amount to be subscribed; but left it to the action or will of the corporators; and had there been sub-

scribed in each instance several hundred thousand dollars, the bonds issued therefor would have been valid and could not have interfered with the power of the city council still to have borrowed money for the public use of the corporation to the limit fixed by the charter, to wit, $100,000. The two classes of bonds are separate and distinct, and in no way interfere with each other. Besides, these railroad bonds were in existence long before the adoption of the present act of the incorporation, and had it been intended to include them in section 31 as "money borrowed for the public use of the corporation," it would have been easy to say so, and in that event the language of the section must necessarily have been different.

I think it clear, therefore, that the city council has the right to borrow money by issuing bonds to pay for this electric plant and machinery, and that when it shall have been done, the total amount of bonds issued to "borrow money for the public use of the corporation" will scarcely reach $50,000, because I regard the bonds to pay for the graded schools of the city as standing on the same footing as the railroad bonds. They amount to $18,000, and were issued under a special act of the legislature. They could not have been issued under section 31 of the charter, because the building of educational institutions is not a "corporate purpose under any of the provisions of the charter."

But it is urged that this new purchase and the great expense of keeping up the new system of electric lights will necessarily increase the burden of taxation. The reply to this is, that taxation is, by the charter, limited to seventy-five cents on the one hundred dollars of the assessed value of real and personal property of the corporators. To this extent the city council can go, but not beyond it. To do this will require additional legislation. No attempt is being made to levy beyond this limit, and should there be such an attempt, the taxpayer has a plain and adequate remedy at law. It will be time enough to meet the evil when it is threatened. This court cannot anticipate a bare possibility for that which is scarcely problematical.

Lastly, it is alleged that the city council is furnishing incandescent lights to private residences and places of business in violation of the charter. If the council has the right to purchase

and operate the plant and to borrow money on bonds to pay for it, as we hold it has, and if incandescent lights are convenient and necessary to light up the public buildings of the city, as is manifestly so, and if from the same plant it can furnish incandescent lights to private residences and places of business, for compensation, and thus make the system, in part at least, self-sustaining, economy and good business management would sustain the transaction ; and whilst the public would be benefited by it, and all should approve it in a business point of view, no one can invoke the aid of this court to prevent it, without alleging and proving that thereby damages and loss are inflicted peculiar and special to himself. The plaintiffs have neither alleged, nor attempted to prove, that this use of the plant is specially injurious, pecuniarily or otherwise, to them. Besides, the evidence on this point is not sufficiently clear, but is conjectural and circumstantial. Incandescent lights are in use in places of business in the city, but whether furnished by the city council or by the Electric Light Company was not made to appear. But be this as it may, the plaintiffs have neither alleged nor proved sufficient of this point to entitle them to equitable relief. The city has use for incandescent lights, and this addition to the plant would seem to be necessary to make it complete and to render the council independent of all other aids. Its purchase is as legal as the purchase of the arc lights, as both are for the public use. Should a taxpayer, specially aggrieved by this incandescent system, institute an action for equitable relief, it will then be time enough to decide the legality of this feature in the use of the plant.

For the foregoing reasons, which I announced in substance in open court, I think the complaint should be dismissed, and hence I signed and filed my judgment of dismissal. It is ordered, that this opinion be filed with the said judgment as a part thereof.

The plaintiffs appealed upon the grounds set out in the opinion.

*Messrs. Wells & Orr*, for appellants.

1. We submit that his honor, the presiding judge, erred in holding that the city council of Greenville have authority, under

the police powers conferred upon them by section 12 of their charter, to purchase an electric light plant, for the purpose of lighting the streets and public buildings of the city. It is a general rule, that corporations can exercise only such powers as are expressly conferred upon them, or which arise by necessary implication. Dillon on Mun. Cor. (3rd ed.), § 89; 108 U. S., 110, 121; 13 Mass., 272; 5 Conn., 560; 20 Cal., 96; 19 Iowa, 199; Cool. Con. Lim., 233, 235, 236, and notes; 23 S. C., 522. No express power is given in the charter to light streets. 19 Stat., 106; Dillon, § 27. It cannot be exercised under the police power or general welfare clause. Dillon, §§ 181, 393–407; 98 Ill., 415. Cities and towns are under no obligation to light the streets at night. 106 Mass., 276.

2. The charter of the city of Greenville limits the indebtedness to $100,000, and the proposed increase will exceed the limit, and is therefore unauthorized. 19 Stat., 106, § 31; 74 Cal., 332; Dillon, §§ 11, 12, 15, 17, 154, 155.

3. The charter of the city having fixed the limit of taxation at seventy-five cents on the $100, and the evidence having shown that the sum realized from this and all other sources is just sufficient to meet the present expenses of the city, his honor should have held that no additional bonds could be issued without additional legislation, which would provide the means of meeting the interest and principal. 19 Stat., 106, §§ 19, 31.

Parties contracting with municipal corporations are bound, at their peril, to see that the charter confers the power to make the contract. 68 N. Y., 23; 19 Iowa, 199; 74 Cal., 332.

*Messrs. T. Q. & A. H. Donaldson*, same side.

Had the city council of Greenville the authority, under the terms of their charter, to purchase and operate the electric light plant for inside lighting of private residences and places of business? Dillon on Municipal Corporations, 3 edit., § 89; Cool. Cons. Lim., 235, 231; Willc. Mun. Corp., 769. The same principle is fully recognized and enunciated in 87 Am. Dec., 423; 13 *Id.*, 100; 7 *Id.*, 145; 67 *Id.*, 471. The doctrine of *ultra vires* is applied with greater strictness to *public* than to private corporations. 5 Am. St. Reports, 830; Dillon Mun. Corp., § 457.

Now, let the action of the city council of Greenville, with reference to the purchase and operation of the electric light plant, be considered in the light of the above authorities. It is not claimed by the respondents that there are any *express* words in the charter by which the power exercised in this instance was granted. By an examination of its provisions (Acts, 1885, page 113), it will be seen that it does grant in express words power "to establish a guard house and to prescribe by ordinance or by-laws suitable rules and regulations for governing the same," also "to erect a powder magazine," but nowhere does it provide for the purchase of an electric plant. It will be conceded, that powers or franchises of an exceptional or extraordinary nature may be, and sometimes are, conferred upon municipalities, such as are frequently conferred upon individuals or private corporations. Thus, for example, a city may be expressly authorized, in its discretion, to erect a public wharf and charge toll for its use, or to supply its inhabitants with water or *gas,* charging them therefor and making a profit. Dillon Mun. Cor., § 27. But of all the numerous illustrations given in the books of what a municipal corporation may do, under the general welfare clause in its charter, or under its police power or its implied power to pass by-laws, no single instance is given, so far as I have been able to find, where it was said or intimated that a municipality would be authorized to purchase and operate an electric plant or gas works, or anything of that nature; and if the other side can find a single authority which sustains the position, that such extraordinary powers may be exercised without such *express* grant in the charter, then I shall be greatly surprised, for I have sought for it in vain.

It will be seen that his honor, Judge Hudson, held that, under the terms of the last named section, the respondents were authorized to purchase and operate the plant, not only to light the streets and public buildings, but from the same plant to furnish incandescent lights to private residences and places of business for compensation. It is respectfully submitted, that this construction would, in effect, convert the municipality into a private corporation, and enable it to compete with its own citizens in private enterprises. Under this construction, it would be difficult to con-

ceive a private enterprise in which the city could not engage, provided the council should decide it would be for the "welfare and convenience of the city." It might be considered that a cotton mill would be a good thing to "boom" the town, and, therefore, for "the welfare" of the city, to establish one within the corporate limits, or that a street railway would be a "great convenience" to the citizens, to be run through the principal streets. The bare statement of the proposition shows that the principle is fraught with unmixed evil, and this was evidently the view taken of the matter by the legislature when applied to for permission to issue bonds to pay for this plant.

Now, is it not manifest from the proof, that one of the chief purposes of the respondents, in purchasing the incandescent system of the electric light plant, was not simply to light the streets and public buildings, but to furnish lights to private residences and places of business for compensation? If this were not the purpose, why invest ten or twelve thousand dollars in the incandescence system, when, according to the proof, this system is not designed for, nor intended to be used for, lighting streets? The contract shows that about one-half of the plant was of this system. Can it be claimed that this expenditure of public funds was for a corporate purpose? If not, then it is submitted that the contract with the Brush Electric Light Company was clearly *ultra vires*, and appellants. as taxpayers, have an interest which entitles them to the relief sought. This position is abundantly sustained by high authority. Dillon Mun. Corp. (2nd edit.), § 731; 22 Conn., 552.

Even granting that the city council had the right, by implication, under section 12 of the charter, to purchase a plant to light the streets and public buildings, and that this was a legitimate corporate purpose, then, unless it can be shown that they were authorized to contract for a plant to light private residences, and that the latter was a legitimate corporate purpose also, we submit that the entire contract must be held to be void. In Roberts *v.* Mayor, etc., of New York, it was held, in substance, that if an appropriation of money be made for two objects—one lawful and the other not—and it cannot be distinguished and separated, then the whole will be held void; otherwise the court will enjoin or

relieve against the expenditure which is unlawful.  5 Abb. Pr.
R., 41.    See, also, 21 Wisc., 514 ; 7 Am. Dec., 145.

In conclusion, it may be remarked, that in this day of "booms,"
when a spirit of rivalry and a rage for what is called improve-
ment seems to have taken possession of most of the towns in the
State, there is a strong tendency, on the part of municipal author-
ities, in their actions, to go beyond the scope of the powers con-
tained in their charters, and thereby to invade and endanger the
rights of the citizen.    Whilst this spirit of enterprise is commend-
able, and should be encouraged, it is the part of true wisdom, and
the high province of the courts, "to keep the corporate wings
clipped down to the lawful standard."

· *Messrs. W. A. Williams* and *Perry & Heyward*, contra.

I. The complaint does not state facts sufficient to constitute
a cause of action in behalf of the plaintiffs, and they cannot
amend as proposed.    18 N. Y., 155 ;  23 *Id.*, 323, *et seq. ;*  12
Peters, 91 ;  *Pom. Eq. Jur.*, § 1349, and cases cited ;  6 John.
Ch., 439 ; 14 Conn., 565 ; 19 *Id.*, 128 ; 7 Cush., 254 ; 3 Atk.,
750 ; 4 Brown's Ch., 165 ; 17 Conn., 372 ; 2 *Dill. Mun. Corp.*,
3rd ed., §§ 912, 914, 920, and cases cited, 921, and 922 ; 1 Rich.
Eq., 99 ; 8 Rich., 214 ; 8 Rich. Eq., 190 ; 11 *Id.*, 432 ; 12 S.
C., 370 ; 1 Bligh (N. S.), 312 ; 45 Eng. Ch. (11 Hare), 205 ;
123 Mass., 460 ; 1 Y. & C. C., 417 ; 3 Ired. Eq., 302 ; 2 Dev.
Eq., 38 ; 1 Beav., 64 ; 2 C. E. Green (17 N. J. Eq.), 75 ; 1
Grant's Cas., 416 ; 3 Rand, 63 ; 2 Wisc., 384 ; 4 *Id.*, 454 ; 22
*Id.*, 594 ; 26 Iowa, 377 ; 20 N. J. Eq., 530 ; 1 *High Inj.*,
§ 762 ; 50 Ga., 451 ; 1 Hill (S. C.), 365 ; 5 Rich., 583 ; 30 S.
C., 539 ; 13 *Id.*, 298 ; 17 *Id.*, 411.

II. A demurrer upon the ground, that the plaintiffs have not
legal capacity to sue, was not our proper remedy.    *Pom. Rem.*,
§ 208 ;  *Moak Van San. Plead.*, *667.

III. The present charter of the city furnishes ample author-
ity for the purchase of the plant and the issuing of the bonds
to pay for the same.    19 Stat., 109, 115 ;  16 Stat., 526, § 2 ;
*Dill. Mun. Corp.*, 3rd ed., §§ 98, 89 ;  *Charter of Greenville
City*, § 32, as amended by act of 1887, p. 1028 ; 65 U. S., 364 ;
95 *Id.*, 644 ; 107 *Id.*, 568 ; 96 *Id.*, 341.

April 21, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The plaintiffs, as citizens and tax-payers of the city of Greenville, instituted this proceeding, to restrain the city council from purchasing and operating an electric light plant, to light the streets and public buildings of the city, and from using the same for lighting private residences; and also to enjoin the council from issuing bonds of the corporation in payment therefor, upon the grounds substantially stated by the Circuit Judge as follows: "First. Because the city charter confers no authority on the council to purchase this machinery for the purpose of lighting the streets and public buildings. Second. Because the power of the city council to borrow money for the public use of the corporation has already been exhausted, and that to issue bonds to pay for this plant would be *ultra vires.* Third. Because seventy-five cents on the $100 of the assessed value of real and personal property of the corporation is the limit of taxation fixed by the charter, and this enterprise will necessarily force the council to exceed that limit, and thus increase the burden of the plaintiffs and all the taxpayers. Fourth. Because the purchase includes a costly engine and dynamos for producing incandescent lights for the interior of private residences and places of business, and there is no authority conferred on the council by the charter to purchase and operate an electric plant for this purpose." Such, briefly and substantially, are the grounds on which the plaintiffs ask relief by injunction. The city council, the defendant, answered fully to the merits, admitting paragraphs one and two of the complaint, but denying each and every other allegation contained in it, not so specifically denied, admitted, or explained; making no objection, however, by plea or demurrer, as to the manner in which the action was brought, in the name alone of the plaintiffs as corporators and taxpayers.

The plaintiffs offered in evidence the charter of the city; that an effort had been made to obtain additional powers, which failed; the contracts the city council had made in reference to the electric plant; the value of the taxable property of the city, its bonded indebtedness, &c., &c.; that the incandescent lights were suitable for lighting the interior of private residences and places of business, but not for lighting the public streets, &c. The city coun-

cil, the defendant, offered no testimony, but moved orally at the trial to dismiss the complaint on the ground that it did not state facts sufficient to constitute a cause of action, which motion was considered in connection with the argument on the merits.

The Circuit Judge remarking, among other things, "that he was not willing to depart from what he considered the practice and doctrine of our own courts. If the complaint states good ground for equitable relief, and the injury complained of is peculiar to none, but common to all the citizens, then the action must be in the name of the State ex relatione the taxpayers, or in the name of the attorney general. The individual taxpayer, as such merely, can obtain a standing in court only by alleging and proving that the illegal act complained of will inflict damage special and peculiar to himself, &c.," held that the complaint should be dismissed, for the reason that it did not state facts sufficient to constitute a cause of action. But, nevertheless, the judge proceeded to consider the case on its merits, and dismissed the complaint also on the ground that there was no right or equity in it. (The whole Circuit decree should appear in the report of the "Case.")

From this decree the plaintiffs appeal to this court upon the following grounds:

"1. Because his honor erred in holding that the complaint did not state facts sufficient to constitute a cause of action.

"2. Because if said complaint was demurrable at all, it was upon the ground that the plaintiffs had not legal capacity to sue, and the objection not being taken by demurrer on that ground was waived.

"3. Because, in any event, the plaintiffs should have been allowed to amend by making the State a party on the relation of the attorney general.

"4. Because his honor erred in holding that the city council of Greenville have authority, under the police powers conferred upon them by section 12 of their charter, to purchase an electric light plant for the purpose of lighting the streets and public buildings of the city.

"5. Because his honor erred in holding that said city council, under the provisions of section 31 of their charter, have authority to issue bonds to the amount of $100,000, exclusive of the $88,-

000 of bonds heretofore issued in aid of railroads and graded schools.

"6. Because the charter of the city, having limited the amount of the annual tax to be levied upon the real and personal property of the citizens to 75 cents on the $100, and it appearing by un-contradicted evidence that the income of the city is just about sufficient to meet the present expenses, his honor should have held that said council were without authority to levy an additional tax to meet the interest on any additional bonds, and, therefore, they had no right to issue them.

"7. Because his honor erred in holding that the said city council have the right to furnish lights to individuals and others for private purposes, thus using the people's money in speculation and trade.

"8. Because it is manifest from the proof, that one of the chief purposes of the defendant in purchasing the incandescent system of the electric light plant, was not simply to light up the public buildings, but to furnish incandescent lights to private residences and places of business for compensation, for which there is no authority in the charter, and to that extent at least, it is submitted, their contract with the Brush Light Company was clearly *ultra vires*, and not binding on the city, and that his honor erred in not so holding.

"9. Because, if the defendant is permitted to carry out this illegal contract, it will inevitably result in a large increase of the debt of the city, and a proportionate increase in the amount of taxes to be paid by the plaintiffs, and this fact, it is submitted, furnishes sufficient grounds for the relief sought by the plaintiffs, and his honor erred in not so finding."

Exceptions 1, 2, and 3 make the point, that it was error in the Circuit Judge to dismiss the complaint, upon verbal motion at the trial, on the ground that it did not state facts sufficient to constitute a cause of action, in that the plaintiffs had not legal capacity to sue in their own name without inserting as plaintiff the State *ex relatione* the complaining taxpayers. It will not be necessary to consider whether, as a matter of pleading, the defendant waived the objection by answering to the merits, without reference to the objection either by answer or demurrer. In the

view the court takes, the objection was purely formal, relating merely to the title of the case; for the plaintiffs might have brought their action acceding to the formula indicated. The State in such case never refuses the use of its name, which might have been added *pro forma*, by order of the court, at any stage of the proceeding. It is always desirable, when it can be done without a breach of principle or injury to others, that the controversies between parties should be decided on their merits alone.

In considering whether the plaintiffs, as taxpayers of the city of Greenville, had the right to bring this action in their own name, for the benefit of themselves and other corporators, without alleging special damage to themselves, it will be proper to keep clearly in view the nature, scope, and object of the action. It must not be overlooked, that it is a proceeding in equity by a number of taxpayers of an incorporated city, to prevent certain acts by the municipal authorities, alleged to be beyond their authority under the charter, to the injury of plaintiffs and all other taxpayers of the corporation, somewhat in the nature of a bill *quia timet*. Can it be, that in such case a number of citizen taxpayers cannot be heard against the corporate authorities in a Court of Equity, asking for an injunction against the consummation of the contemplated wrongs, without alleging special damages to themselves individually? There is a certain relation in the nature of agency between the municipal authorities and all taxpayers of the corporation. It does not strike us that the doctrines as to nuisances and public wrongs of that character have any proper application to the case.

We cannot agree that there is any analogy between this case and those of the class of *Steamboat Company* v. *Railroad Company*, 30 S. C., 539. That was an action at law for damages on account of the obstruction of a navigable river, which was a public nuisance to all the world. The parties were in all respects strangers to each other. Here the taxpaying citizens of Greenville are not the whole public, but comparatively a small part of it. They are not strangers to the municipality. They, and they alone, are affected by their acts. As to them, this is more in the nature of a private than public matter. We think the distinction was well stated in the case of *Mayor and Council of Baltimore* v. *Gill*,

31 Md., 375–94. That was a proceeding to restrain by injunction the mayor and council of Baltimore·from carrying out the provisions of an ordinance, authorizing the borrowing of money to build certain railroads. The plaintiffs were taxpayers on real and personal property situated in Baltimore, and they sued in behalf of themselves and others similarly situated. It was maintained (as here), that the plaintiffs had no standing in court, and were not entitled to ask the interposition of a Court of Equity, to restrain by injunction the execution of the ordinance. It was further maintained (as here), that the wrong complained of was of a public nature, affecting the whole public, in which the attorney general, as the representative of the State, was a necessary party. It was held that the interests of the plaintiffs as taxpayers was sufficient to entitle them to maintain the action, and that the attorney general was not a necessary party.

Bartol, Chief Justice, in delivering the judgment of the court, said: "The case is to be distinguished from cases of public wrongs, in which the general public are alike concerned; the plaintiffs are taxpayers of the city, and others similarly situated constitute a class especially damaged by the alleged unlawful act, in the increase of the burden of taxation upon their property situated in the city. They have, therefore, a special interest in the subject-matter of the suit, distinct from that of the general public"—citing the cases of *City of New London* v. *Brainard*, 22 Conn., 552; *Webster* v. *Town of Harwinton*, 32 *Id.*, 131; *Merrill* v. *Plain-field*, 45 N. H., 126; *McMillan* v. *Lee County*, 3 Iowa, 311, &c.

In the case of *Newmeyer* v. *The Missouri & Mississippi Railroad Company* (52 Mo., 81, s. c. 14 Am. Rep., 399), Mr. Justice Ewing thus vindicates the ruling: "I have examined the cases cited in support of the other side of the question, or such of them as we have had access to, and upon a careful consideration of the subject, I am of opinion that the decisions which affirm the right of plaintiffs (or those standing in the same relation to such controversies) to maintain the action, rests upon a more solid foundation of principle and reason than those holding the contrary doctrine. And they are commended to our approval as furnishing the only adequate remedy to the injured party for wrongs resulting from unauthorized or illegal acts, like those complained

of. The injury charged as the result of the acts complained of
is a private injury, in which the taxpayers of the County of
Macon are the individual sufferers rather than the public. The
people out of the county bear no part of the burden, nor do the
people within the county, except the taxpayers, bear any part of
it. It is, therefore, an injury peculiar to one class of persons,
namely, the taxpayers of the County of Macon," &c.

It is true, as indicated above, that all the authorities on the
subject are not in perfect accord. But without encumbering this
opinion with the numerous authorities, we think it will be suffi-
cient to say that Judge Dillon (certainly our greatest authority
on municipal corporations), after a careful analysis and examina-
tion of the decisions, states, "as resting upon reason and the pre-
ponderance of judicial authority," the following propositions:
"(1) That in the absence of special controlling legislative provi-
sions, the proper public officer of the commonwealth, which cre-
ated the corporation and prescribed and limited its powers, may,
in his own name or in the name of the State on behalf of resi-
dents and voters of the municipality, exercise the authority in
proper cases of filing an information or bill in equity, to prevent
the misuse of corporate powers, or to set aside or correct illegal
corporate acts. (2) That the existence of such a power in the
State or its proper public law officer is not inconsistent with the
right of any taxable inhabitant to bring a bill to prevent the cor-
porate authorities from transcending their lawful powers, where
the effect will be to impose on him an unlawful tax, or to increase
his burden of taxation," &c. See 2 Dill. Mun. Corp., § 922 (3rd
edit.), and the authorities in the note.

We know of no act of the legislature, or decided case, which
declares the law of this State to be as contended for. All that is
claimed is, that it has been "the practice" of the State until it
has ripened into law. It does seem to have been the early prac-
tice, but we have not been referred to a case in which an action
like this was dismissed, for the reason that it was not brought
according to the indicated formula. Certainly, since the Code
was adopted in 1870, the practice has not been uniform and un-
broken. *Gage* v. *Charleston* (3 S. C., 491—1872) was an action
for injunction to restrain the city council of Charleston from sub-

scribing to certain railroad companies, brought by Alva Gage and seven other named persons, "inhabitants and property holders of the city of Charleston, for themselves and other property holders of said city." *Glenn* v. *The County Commissioners of York* (6 S. C., 412—1873) was an action to restrain the county commissioners from issuing bonds in aid of the construction of a railroad, brought by "E. L. Glenn and other taxpayers on real and personal estate in York County." *Trimmier* v. *Bomar* (20 S. C., 354—1883) was an action to restrain the county commissioners of Spartanburg from issuing bonds in aid of a railroad, "brought by Trimmier, Yarborough, Pool, Tolleson, and Walker," &c.

So it seems that the law on the point of practice has not been absolutely settled in the State. We have no doubt that the plaintiffs might have given their proceedings the form required by the ruling below, but were they bound to do so, on pain of having it dismissed? Was the action brought absolutely inconsistent with the right of the State? We know of no principle or such unbroken practice in the State as requires the court to hold that the proceeding was unauthorized. We think the plaintiffs had a standing in court, and were entitled to have their case heard on its merits.

The charter of the city of Greenville, as amended in 1885 (19 Stat., 106), contains the following provisions for the government of the city : Section 12 provides that the council "may purchase, hold, possess, and enjoy, to them and their successors, in perpetuity or for any number of years, any estate, real, personal, or mixed, and sell, lease, alien, and convey the same: provided. that the same shall not exceed at any time the sum of ($100,000) one hundred thousand dollars. And the said city council shall have full power and authority to make and establish all such rules, by-laws, and ordinances respecting the roads, streets, market, and police department of said city, and the government thereof, as shall appear to them necessary and requisite for the security, welfare, and convenience of said city, for preserving health, life, and property therein, and securing the peace and good government of the same," &c., &c. Section 19 gives the city council the right "to levy annually a tax on the assessed property of the city, suf-

ficient to discharge and defray all expenses of carrying into effect the ordinances, rules, regulations, and laws made and established as above provided: provided, said tax does not exceed seventy-five cents upon every one hundred dollars of real and personal property as assessed and equalized." And section 31 provides that the city council shall have power to borrow money for the public use of the corporation, by issuing from time to time, as occasion may require, the bonds of said corporation, bearing interest, &c., &c., for an amount not to exceed the sum of one hundred thousand dollars ($100,000), and for the payment of interest, &c., &c.

In order to prevent confusion, we will first dispose of the preliminary question as to the ordinary expenses of the city government of Greenville, and the prohibition claimed to exist in the charter against increasing the bonded debt of the city beyond $100,000. It is urged that the debt already amounts to $88,000 (principally for subscriptions to railroads and public schools), and with the $21,000 now proposed to be added, it will be extended beyond the limit. Upon casually reading the provision, the first impression may be that it was intended to limit the whole bonded debt for any and all purposes to $100,000. Indeed, unless such was the purpose, it would hardly seem necessary to fix a limit at all. But upon close examination, we cannot say that such is the proper construction. The words are (in 1885), "to borrow money for the public use of the corporation, by issuing bonds for an amount not exceeding $100,000"—omitting the words of the old charter (1880)—"but never in any form to make the city liable for exceeding that amount in the aggregate." We agree that the framers of the provision intended to give the authority to issue bonds subsequent to the date of the charter, "for the public use of the corporation," to the extent of $100,000. See *Hitchcock* v. *Galveston*, 96 U. S., 349.

Then, the question is, whether, under the aforesaid provisions of the charter, the city council had the power to purchase, own, and operate at the expense of the city an electric light plant for the double purpose of lighting the streets of the city, and providing incandescent lights to individuals for the interior of private residences and business offices and purposes. Judge Dillon, in his Municipal Corporations, § 89 (3rd edit.), states as follows:

"It is a general and undisputed proposition of law, that a municipal corporation possesses, and can exercise, the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared object and purposes of the corporation—not simply convenient, but indispensable. Any fair reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract, or incur any liability, not authorized thereby. All acts beyond the scope of the powers granted are void," &c., &c.

Now, tested by this principle, so clearly stated, how does the matter stand? Clearly the charter does not give the power to purchase this plant in express words. It does not so give even the power to light the city, but we assume that this latter power may be fairly implied from the grant of the police power. The city council had previously lighted the city with gas, and we suppose that it might do so with electricity as well. The lighting, however, with gas was done by contract, and the new feature complained of is that the council now propose to purchase, own, and operate the engines, dynamos, and machinery which produce the electricity, and to pay for it by issuing municipal bonds. This seems to be a new question. It strikes us as remarkable, that in the multitude of cases cited by the distinguished counsel who argued the case, there should not be in one of them the least reference to this precise point. We have made diligent search, and have not been able to find one. We must decide it, but without any help from authorities. The city has the express power to own property, and it also has the implied right to light the city. Do these powers necessarily imply the right to make the city the owner of the plant and a manufacturer of electricity? It is quite certain that such power is not "essential" to the declared objects and purposes of the corporation, for heretofore the city has been lighted by contract, without owning the gas fixtures. The purchase of the electric plant was certainly a new departure, and it is to be hoped that it may not prove to be troublesome and

expensive to the city. But considering that some discretion, as to the mode and manner, should be allowed the municipality in carrying out the conceded power to light the streets of the city, we hold that the purchase of the plant was not *ultra vires* and void, so far as it was designed to produce electricity suitable for and used in lighting the streets and public buildings of the city.

But we cannot so hold as to the purchase of so much of that plant as furnished the incandescent light for use in the interior of private residences and places of business, which cannot be properly included within the power to light the streets of the city. The uncontradicted testimony was, that the incandescent light is not suitable for lighting the public streets. We are, therefore, unable to agree with the Circuit Judge, when he said, that "if the city, from the same plant, can provide incandescent lights to private residences and places of business for compensation, and thus make the system, in part, at least, self-sustaining, economy and good business management should sustain the transaction," &c. As we understand it, all the powers given to the city council were for the sole and exclusive purpose of government, and not to enter into private business of any kind, outside of the scope of the city government. In that very direction, especially in these latter times, is the dangerous and growing tendency of municipal corporations. It is very important for the interest of all to keep them strictly within the legitimate limits of their powers. The power given to the city council to issue bonds, so as to bind not only all the taxpayers of the city, but their children as well, is a very high confidence and trust, and can be properly exercised for no other purpose than "for the public use of the corporation," no matter how great the temptation may be. Without regard to good "business arrangements," which may present themselves, such a power must be strictly executed. We cannot suppose that it was intended to give the city council, as such, the right to go into commerce, to buy for the purpose of selling again, or to enter into any private business or speculation whatever. As, for instance, if the city council, owning horses in the discharge of their police duties, should find it necessary to establish a blacksmith's shop, we do not think they would be

within their corporate duties to open it for the accommodation of the public, with or without compensation.

In the case of the *City of Ottawa* v. *Carey* (108 U. S., 110), the following propositions were announced: "(1) To the extent of their authority, municipal corporations can bind the people and the property subject to their regulations and governmental control by what they do, but beyond their corporate powers, their acts are of no effect. (2) Power to govern the city does not imply power to expend the public money to make the waters in the rivers available for manufacturing purposes." Chief Justice Waite, in delivering the judgment of the court, said: "The charter confers all the powers usually given to a city for the purposes of local government, but that of itself has never been supposed to authorize taxes for everything which, in the opinion of the city authorities, would promote the general prosperity and welfare of the municipality. Undoubtedly, the development of the water power in the rivers that traverse the city would add to the commerce and wealth of the citizens; but certainly power to govern the city does not imply power to expend the public money to make the water in the rivers available for manufacturing purposes," &c.

We cannot doubt that the purchase of the system producing incandescent lights, so far as it was to furnish lights to private persons, with or without compensation, was not a corporate act by the city council, and binding upon the corporators, but was beyond their authority as the governing body of the corporation.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded to the Circuit for such further proceedings as may be deemed necessary to carry into effect the conclusions herein announced.