## SLIGH v. BOWERS.

County Board of Education—Trustees of Public Schools—Tax-payers—Injunction.—After a county board of education has decided that a school building shall be maintained at a particular site in the district, a board of trustees cannot use public funds for erecting another building at another site, without reversal of the action of the county board, and the Circuit Court at the suit of taxpayers in the district may enjoin such action of the trustees.

Before Gage, J., Newberry, November, 1901.    Affirmed.

Action for injunction by J. A. Sligh *et al.,* taxpayers of School District No. 19, against Geo. W. Bowers and others, as trustees of such district, and the county board of education for Newberry County.    From order granting temporary injunction, defendants appeal.

*Messrs. Hunt, Hunt & Hunter,* for appellants, cite: *Court of equity cannot grant injunction where there is adequate remedy by statute:* 16 Ency., 2 ed., 354; 9 S. C., 308; 9 Rich., 292; 2 Hill, 357; 12 Rich., 44; 51 S. C., 389; 52 S. C., 201; 1 High on In., p. 28, sec. 29.    *Plaintiffs had adequate remedy by statute:* 22 Stat., 161, 164, secs. 29 and 36. *Consent of county board not necessary before trustees can change site of school building:* 22 Stat., 167, sec. 44.    *Duty of trustees to manage local and educational interest of district:* 22 Stat., 165, sec. 37.    *Plaintiff must make out clear right to relief by his pleading:* 10 Ency. P. & P., 940, 943; Rice Eq., 80.    *No right of injunction exists where there is plain and adequate remedy at law:* 10 Ency. P. & P., 923, 951, 952, 953; High on Inj., sec. 28.

*Messrs. Schumpert & Holloway,* contra, were to file argument, but case was decided before argument filed.

February 12, 1901.    The opinion of the Court was delivered by

Mʀ. Jᴜsᴛɪᴄᴇ Gᴀʀʏ. This is an action for injunction by plaintiffs, as patrons of School District No. 19, of Newberry County, arising out of a contention over the location of the school building in said district. The appeal is from an order overruling a demurrer to the complaint which (omitting the formal parts thereof) is as follows:

"5. That said school district was established, surveyed and laid off by metes and bounds in the year 1893, and the school house site for the white children of said district was located and established by the then school trustees for said district, at a point on the ridge between Sligh's Depot, on the Columbia, Newberry and Laurens Railroad, and the residence of Dr. D. H. Werts, which site was afterwards confirmed by three successive county boards of education, and that when petitions were presented to two of said boards asking for a change of said site, the granting of same was as many times refused.

"6. That the site selected for the location of said school house was by actual survey ascertained to be practically the centre of the area as well as the centre of population thereof, and the free public schools have been conducted in the school house located and established as aforesaid, from the time it was so established until the school house was destroyed by fire on or about the first day of March, 1901.

"7. That in the year 1893 the land on which the public school house was erected and afterwards destroyed, as aforesaid, was deeded by J. A. Sligh, one of the above plaintiffs, and the owner thereof, free of all cost, to said school district 'for school purposes for white children;' and it is now owned by and it is in the possession of the school trustees of the said school district.

"8. That the defendant trustees, in wanton disregard of the right and convenience of these plaintiffs and many other residents and patrons of said school district, and in utter disregard of the action of their predecessors in office in establishing a permanent site for the school house to be used by the free public school of said district, are now building

and erecting with the public funds set apart for said school district a school house for said school district at another place, and at a point quite distant from the centre of area and population, and within a few hundred yards of said school district No. 19 and school district No. —.

"9. That to erect a school house for said district at the point where the defendant trustees are now building it, is not only without warrant of law, but their said action practically deprives the plaintiffs, and many other patrons, of those educational privileges to which they are entitled under the free public school laws of the State, and thereby will do them and others irreparable injury.

"10. That the proposed new site on which the said trustees are now erecting a school house with the free public funds of said district, was not selected according to law, and all expenditures of the public money thereon are without lawful authority, and do these plaintiffs, and all others in like circumstances, a great damage.

"11. That the said acts and doings of the defendant trustees in relating or tending to the building of a school house for said district at any point, or on any site, other than the one heretofore selected, and deeded by J. A. Sligh on the 16th day of December, 1893, are in bad faith and in direct opposition to the wishes and the interests of the plaintiffs, and of the citizens, taxpayers and other residents of said district."

The appellants' attorneys in their argument thus state the questions presented by their exceptions: "The appellants have numerous exceptions to the order of his Honor, the presiding Judge, but they resolve themselves into the two principal questions involved in this appeal, viz: 'Did the Court have jurisdiction?' and 'did the complaint state facts sufficient to constitute a cause of action?' and these two points may be consolidated into one jurisdictional question, as the question of insufficiency of facts is merged into that of jurisdiction of the Court."

The appeal involves the construction of the school laws

of the State, so much of which as is necessary in the consideration of the appeal is as follows : "Sec. 28 (acts of 1896, 22 Stat., page 150). * * * "The school funds of each school district shall be distributed and expended by the board of trustees for the best interest of the school district, according to the judgment of the board of trustees, on their warrant approved by the county superintendent of education * * *

"Sec. 29. The county board of education shall constitute an advisory board, with whom the county superintendent of education shall have the right to consult when he is in doubt as to his official duty, and also a tribunal for determining any matter of local controversy in reference to the construction or administration of the school laws, with the power to summon witnesses and take testimony if necessary, and when they have made a decision said decision shall be binding upon the parties to the controversy : *Provided,* That either of the parties shall have the right to appeal to the State board of education * * *

"Sec. 32. Each school district shall be under the management and control of the board of trustees hereinafter provided for, subject to the supervision of the county board of education.

"Sec. 37. The board of trustees in each school district shall take the management and control of the local educational interests of the same, and shall visit each school district at least once in every school term, and shall be subject to the supervision and orders of the county board of education.

"Sec. 39. The school trustees of the several school districts are authorized and empowered to sell any school property, real or personal, in their school districts whenever they deem it expedient to do so, and to apply the proceeds of sale or sales to the school fund of the district wherein such sale is made : *Provided,* That the consent of the county board of education be first obtained by the trustees desiring to make such sale. That it shall be the duty of the said board of

trustees, within thirty days after said sale, to enclose a report of the same to the county board of education, setting forth the terms and amount of said sale."

It will thus be seen that while the board of trustees have the management and control of the school district, they are "subject to the supervision of the county board of education" and "subject to the supervision and orders of the county board of education;" that the county board of education is a "tribunal for determining any matter of local controversy in reference to the construction or administration of the school laws, * * * and when they have made a decision, it shall be binding upon the parties to the controversy." The complaint alleges that the first site was located and established by the board of trustees in 1893, which was afterwards confirmed by three successive boards of education, and that when petitions were presented to two of said boards asking for a change of said sites, the granting of the same was refused. The decision of the county board of education was binding until reversed by that board. It was, therefore, unlawful for the board of trustees to change the site.

The complaint also alleges that the board of trustees "are now building and erecting with the public funds set apart for said school district, a school house for said district at another place." This is an unlawful use of the public funds, which the Court in the exercise of its equitable powers will enjoin. In *Crampton* v. *Zabriskie,* 101 U. S., at page 609, Mr. Justice Field used this language: "Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county * * * there is at this day no serious question." See, also, authorities cited by Mr. Chief Justice McIver, in *Butler* v. *Ellerbe,* 44 S. C., at page 283. We are satisfied that the Circuit Court had jurisdiction, and that the complaint stated facts sufficient to constitute a cause of action.

It is, therfore, the judgment of this Court, that the order of the Circuit Court be affirmed.