BEAVER GLASS AND MIRROR CO., INC., *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF EDUCATION OF ROCKFORD SCHOOL DISTRICT NO. 205 *et al.*, Defendants and Third-Party Plaintiffs and Counterdefendants-Appellees.— (ROCK VALLEY GLASS CO., Third-Party Defendant and Counterplaintiff.)

Second District   No. 76-426

Opinion filed May 9, 1978.

Miller & Hickey, of Rockford, for appellants.

Stephen T. Moore, of Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The petitioners, Beaver Glass and Mirror Co., Inc., and Walter Williams, president of Beaver Glass (and a taxpayer within the school district), filed a petition for a writ of mandamus to compel the Board of Education of Rockford School District No. 205 (hereafter the "Board"), to assign the glass replacement contract for the school year 1975-76 to Beaver Glass; petitioners also sought $2,500 for damages to the date of the petition, although this prayer was subsequently amended to ask for more general relief. The petition was filed on August 7, 1975, and on October 2, 1975, petitioners filed a motion for a preliminary injunction to stop performance of the glass replacement contract by Rock Valley Glass Co., the successful bidder on the contract. (Rock Valley Glass Co. was also a third-party defendant and counterplaintiff in this action, but has taken no part in the appeal.) On January 15, 1976, the trial court denied the motion for a preliminary injunction and on May 20, 1976, the court denied the petition for a writ of mandamus. Petitioners appeal from the court's order of May 20, 1976.

Beaver Glass' claim regarding the 1975-76 glass replacement contract is based on section 10—20.21 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—20.21) which requires school boards to "let all contracts for supplies, materials or work involving an expenditure in excess of $2500 to the lowest responsible bidder * * *." The Board's action in awarding the glass replacement contract for the 1975-76 school year to the Rock Valley Glass Co., rather than Beaver Glass, was based on its interpretation of section 1 of the prevailing wage law (Ill. Rev. Stat. 1975, ch. 48, par. 39s— 1 et seq.) which provides that:

> "It is the policy of the State of Illinois that a wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workmen and mechanics employed by or on behalf of any and all public bodies engaged in public works, *exclusive of maintenance work*." (Emphasis added.)

Section 2 of the prevailing wage law (Ill. Rev. Stat. 1975, ch. 48, par. 39s—2) defines "maintenance work" as "the repair of existing facilities when the size, type or extent of such existing facilities is not thereby changed or increased." Beaver Glass was the lowest bidder for the school district's 1975-76 glass replacement contract, but Rock Valley Glass Co. was awarded the contract since the Beaver Glass bid did not contemplate paying glaziers the prevailing wage, as required by the bid specifications. Beaver Glass asserted that the Board's failure to award it the contract violated the requirement for awarding contracts to the "lowest responsible bidder."

The Board contends that Beaver Glass was not a "responsible bidder," citing evidence of certain problems regarding the company's performance of prior glass replacement contracts. However, Charles McAnarney, the School District Director of Purchasing, testified that he would not have sent a bid specification to Beaver Glass if he had regarded Beaver Glass as ineligible to bid, and that Beaver Glass' bid was rejected because it did not comply with bid specifications concerning the prevailing rate of wages, and not because Beaver Glass was not a "responsible bidder." The trial court found that the Board regarded Beaver Glass to be a "responsible bidder" and there is nothing in the record which would justify this court taking a different view.

■■ Next, the Board argues that rejection of Beaver Glass' bid was mandated by the requirement that the "prevailing hourly rate" be paid on public works. In the Board's view, the glass replacement contract did not involve "maintenance work" which is excepted from the requirement of payment of the "prevailing" rate, since, due to changing regulations and building codes, "at least 50%" of the panes of glass that are replaced during the year are replaced with materials other than the kind of glass which

was broken, ordinary glass being replaced with "wire glass" or "lexon and acrylic" in many instances. However, the trial court expressly held that the contract was one for "maintenance work" and we agree. The use of new materials in replacing some of the glass, from time to time, would not, in our opinion, constitute such a change in the "type or extent" of "existing facilities" as would remove this contract from the category of "maintenance work."

■■ It is thus clear that the statutory requirement of letting bids to the "lowest responsible bidder" applied to the contract in this case and that the statute mandating payment of the "prevailing hourly rate" did not. Such conclusions point logically to the question of whether the Board could, without express statutory authority, reject the lowest responsible bidder on the grounds that the bid failed to comply with the Board's *own* prevailing wage requirement. In regard to this question, it is clear that a school board has only such powers as are conferred upon it by the legislature (*Weary v. Board of Education* (1977), 46 Ill. App. 3d 182; *Wesclin Education Association v. Board of Education* (1975), 30 Ill. App. 3d 67), and it is also evident that the governing statutes do not expressly authorize the Board to exact a "prevailing wage" requirement on maintenance contracts. In a perhaps analogous case, the court applied this rule in holding that a board of education had no right to stipulate in a contract that only union labor could be employed by the contractor. (*Adams v. Brenan* (1898), 177 Ill. 194.) Nonetheless, the Board asserts that it had discretion to require payment of the "prevailing wage" on maintenance contracts, citing *John N. Brunsfeld & Sons v. Board of Education* (1977), 54 Ill. App. 3d 119, and *Arthur Weil & Co. v. Board of Education of Chicago* (1977), 49 Ill. App. 3d 649. Both cases involved "affirmative action" requirements promulgated by the Chicago Board of Education for bidders on school contracts; obviously, "affirmative action" involves considerations distinct from those attendant upon a requirement that a contractor pay the "prevailing hourly rate," and further, in each case the requirement was based upon a statute granting the Chicago Board of Education broad rule making authority, which is not applicable in this case. (Ill. Rev. Stat. 1975, ch. 122, par. 34—19.) The cited cases are rather doubtful authority for the Board's position here.

■■■ However, it is not necessary for us to determine this question. The glass replacement contract for the 1975-76 school year has long since been performed and there is no longer any way that a court could direct that the contract be assigned to Beaver Glass, by writ of mandamus, or otherwise. There remains only the plaintiff's prayer for an award of money damages, and we are convinced the plaintiffs would have no entitlement to such an award, even if we held that the Board's action in imposing a "prevailing hourly rate" specification on bids for the glass

replacement contract exceeded its authority and violated the requirement that the Board accept the lowest responsible bid.

We note that although one of the plaintiffs, Walter Williams, the president of Beaver Glass, is a taxpayer who resides within the district, plaintiffs have conceded that this is not a taxpayers' suit or representative action (see *Hamer v. Board of Education* (1977), 52 Ill. App. 3d 531), and in any case "mandamus is a law action in which representative suits are unknown." (*Retailer Liquor Dealers Protective Association v. Schreiber* (1943), 382 Ill. 454, 459.) Thus, the action was clearly brought for the benefit of the petitioners individually and not for that of the public generally. The Board did not accept Beaver Glass' bid and Beaver thus had no contractual right to a recovery of damages; its right to a recovery must, therefore, of necessity, be grounded upon the Board's asserted failure to award the contract to the lowest responsible bidder, as required by section 10—20.21 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 10—20.21). Yet,

> "Since the power of letting public contracts must be exercised for the benefit of the public and not of the bidder, it is generally held that an award of a contract to one other than the lowest bidder does not entitle the lowest bidder to a recovery of damages from the municipality, nor to an action to recover profits which he might have made had his bid been accepted." (10 McQuillan, Municipal Corporations §29.86 (1966).)

It is evident that the statute was enacted for the benefit and protection of taxpayers residing within a school district, and not for the benefit of contractors who are unsuccessful in bidding on school contracts. The statutory purpose would not be served by construing the statute as creating a right in unsuccessful bidders to recover from the school district for the profits they would have made had they been awarded the contract. If the statute were held to create such a remedy, then taxpayers, whom the statute was designed to protect, would be injured *twice* whenever the school board failed to award a contract to the lowest responsible bidder: the first time, through the unjustified additional expenditure of funds on the awarded contract, and then, a second time through the necessity for paying a judgment for lost profits to the aggrieved low bidder. (See 10 McQuillan, Municipal Corporations §29.86 n. 79 (1966).) It is therefore obvious that section 10—20.21 of The School Code was never intended to create the private remedy that the plaintiffs seek by this action.

■■■ Plaintiffs have argued that Beaver Glass is entitled to an award of damages because section 5 of the mandamus act (Ill. Rev. Stat. 1975, ch. 87, par. 5) provides that "[i]f judgment is given for the petitioner he shall recover his damages and costs * * *." However, this section is

procedural in its effect, and does not, in itself, create any right to recover damages which would not exist, absent the provision. (52 Am. Jur. 2d *Mandamus* §497 (1970).) Further, a petitioner in a mandamus action who has asked for a money judgment must show a "clear legal right" to the amount prayed for; thus, "[t]he collection of an unascertained debt or sum of money is not the proper subject of a mandamus action." (*Betebenner v. Board of Education* (1949), 336 Ill. App. 448, 458; *People ex rel. Rude v. County of LaSalle* (1942), 378 Ill. 578.) Although the petitioners prayed for "damages to date" of $2,500 in their initial petition, they subsequently amended the prayer of their petition so as to instead pray merely for "such other and further relief as the court deems just." Even if it were assumed that Beaver Glass had some legal right to collect money damages from the Board, any damages due to petitioners are clearly unascertained, and potentially subject to questions of reasonableness or mitigation. Petitioners clearly have no entitlement to an award of damages pursuant to the mandamus act.

■■ Thus, the petitioners had no entitlement to damages regardless of whether or not the Board acted properly in awarding the glass replacement contract to the higher bidder, and it is no longer possible for a court to grant coercive relief. Since the Board would not, in any event, be liable for costs (see 26 Ill. L. & Prac. *Mandamus* §198 (1956); *People ex rel. Saxe v. Board of Education* (1917), 206 Ill. App. 381), no purpose could be served by reversing the judgment of the trial court.

The order of May 20, 1976, of the circuit court of Winnebago County is therefore affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.