L. E. ZANNINI & CO., INC., Plaintiff-Appellant, v. BOARD OF EDUCATION, HAWTHORN SCHOOL DISTRICT 73, Defendant-Appellee (Jenkins & Boller Co., Inc., Intervenor-Appellee).

Second District    No. 2—85—0669

Opinion filed December 10, 1985.

---

*Justice George W. Lindberg was a member of the panel in this cause. After oral argument he recused himself and Presiding Justice William R. Nash was assigned to this cause in lieu of Justice Lindberg.

Michael L. Shakman and Catherine H. McMahon, both of Miller, Shakman, Nathan & Hamilton, of Chicago, for appellant.

Thomas A. Morris and Anaclerio Nicholas, Jr., both of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee Board of Education, Hawthorn School District 73.

John R. Sloan, of Hall, Holmberg, Sloan, Roach, Johnston & Fisher, of Waukegan, for appellee Jenkins & Boller Co., Inc..

JUSTICE UNVERZAGT delivered the opinion of the court:
Plaintiff, L. E. Zannini & Co., Inc. (Zannini), a general contractor,

was the low bidder on a $2.7 million contract for the construction of a new public school. Defendant, board of education, Hawthorn School District 73 (board), awarded the contract to the second lowest bidder, Jenkins & Boller Co., Inc. As a result, Zannini filed suit charging the board with violating section 10—20.21 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 10—20.21), which requires contracts to be awarded to the "lowest responsible bidder." Jenkins & Boller was permitted to intervene in the suit. After various hearings, the trial court, based on this court's decision in *Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880, dismissed Zannini's complaint. Zannini appealed and the board cross-appealed a portion of one of the trial court's orders which found that Zannini's complaint was factually sufficient to state a cause of action.

In June of 1985, the board, through its architect, Joseph Legat Architects, P.C. (Legat), solicited bids for the construction of a new school. Included among the instructions to bidders were the following provisions:

"A. If the Owner should award a Contract, the Owner will award it to the lowest bonafide Bidder with full consideration given to Contractor's Completion Schedule.

B. In awarding contract, the Owner may take into consideration skill, facilities, capacity, experience, ability, responsibility, previous work, financial standing of bider [*sic*], amount of work being carried on by bidder, quality and efficiency of construction equipment proposed to be furnished, period of time within which proposed equipment is furnished and delivered, and necessity of prompt and efficient completion of work herein described."

The proposed contract for the project contained a liquidated damages clause which provided that if the work was not completed on the specified completion date, the board would withhold from the contractor's final payment "$400 per calendar day from the required date of final completion to the actual date of final completion."

Legat provided each bidder with the necessary documents, including a bid form which was to be completed, sealed, and filed with the board. In section A of the bid form, the contractor was to state its base bid for all the work on the project. In section B, entitled alternate bids, the contractor was to "[s]tate the amounts of Alternate Prices to be added to or deducted from the Base Bid on the Bid Form." The instructions to alternate No. 1 provided: "State the amount to be deducted from the lump sum base bid if the Liquidated Damages Clause is deleted from the Contract." Section F established July 1, 1986, as the date when all work on the school was to be completed. Section G

provided:

> "The space to the right of the desired completion schedule has been left for insertion of Contractor's own completion schedule dates, if he feels that the desired dates as stated in the specifications cannot be met.
>
> DESIRED COMPLETION    CONTRACTOR'S COMPLETION
>
> July 1, 1986        _____."

Seven contractors bid on the school project. The bids were opened at a school board meeting on July 22, 1985. Zannini was the low bidder with a base bid of $2,716,000, some $8,000 less than the second lowest bidder, Jenkins & Boller. However, Zannini had inserted a figure of $24,000 in alternate No. 1, while Jenkins & Boller had inserted the words "No Bid." In addition Zannini did not insert a completion date in section G, while Jenkins & Boller had inserted the date July 1, 1986. Ben White, administrative assistant to the superintendent of Hawthorn School District 73, stated in an affidavit (which was attached to the board's motion to dismiss) that Wayne Machnich, Legat's representative, met with the board and reported that while Zannini was the low bidder, it had provided for 60 days of liquidated damages in its bid by stating in alternate No. 1 that it would reduce its base bid by $24,000 if the board agreed to remove the liquidated damages clause from the contract (60 days times $400 per day liquidated damages equals $24,000). In addition, unlike the other bidders, Zannini did not complete the space provided for the insertion of the contractor's completion date in section G. According to White, the board, after discussing the bids with Machnich, "determined that the Zannini bid was structured so as to allow the bidder to finish 60 days late without penalty. This was considered a nonresponsive act, and contrary to the prompt and efficient completion of the work." Consequently, the board rejected Zannini's bid and instead awarded the contract to Jenkins & Boller.

Zannini countered by filing a one-count complaint in the circuit court of Lake County, charging the board with violating section 10—20.21 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 10—20.21).The complaint sought declaratory and injunctive relief, a common law writ of *certiorari* and a writ of *mandamus* directing the board to award the contract to Zannini. In essence, Zannini claimed it was denied the contract solely because it complied with the board's own bidding instructions. Zannini alleged that it learned from the board and Legat that the board rejected its bid because it had bid $24,000 in alternate No. 1 and because it had failed to insert a comple-

tion date in section G. Neither reason, Zannini charged, was sufficient justification for awarding the contract to Jenkins & Boller. Zannini alleged that it bid on alternate No. 1 because the bidding instructions required it to do so. It further alleged that it could complete the construction by the specified completion date, and therefore did not insert a completion date in section G because the instructions only called upon the contractor to insert a date if he felt he could not complete the project on time. Zannini also charged the Board, based upon "information and belief," with favoritism in awarding the contract to Jenkins & Boller.

The Board moved to dismiss the complaint on the ground that Zannini was not a taxpayer of the school district and therefore lacked standing to maintain a cause of action under this court's decision in *Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880. Alternatively, the board, asserting that the complaint contained only conclusional allegations, moved to strike the complaint for failure to state a cause of action. The trial court granted the motion to dismiss insofar as Zannini's claim was based on the School Code but denied the motion with respect to the causes of action for common law *certiorari* and *mandamus*. The court also denied the board's motion to strike, finding that the allegations were sufficient to state a cause of action. Later the board filed a motion for summary judgment, which in reality was a motion to reconsider the earlier ruling. The board argued that as a matter of law, Zannini was unable to state any cause of action. The trial court agreed, and reversed its earlier ruling and granted the board's motion to dismiss Zannini's action based on common law *certiorari* and *mandamus*.

Zannini filed an emergency motion in this court for (1) a stay pending appeal to preserve the status quo; (2) an expedited decision on appeal; and (3) injunctive relief. This court denied the motion but did provide for an expedited briefing schedule. Zannini filed an emergency motion for a supervisory order in the supreme court requesting the court to order this court to expedite hearing of this appeal without further briefing and to enjoin the board and Jenkins & Boller from altering the status quo and proceeding with construction beyond the site clearing stage until this appeal was decided. The supreme court denied the motion.

The board filed a motion in this court to strike four discovery depositions, one evidence deposition and two affidavits from the record on appeal. In addition, the board moved to strike certain pages of Zannini's brief wherein Zannini refers to the depositions and affidavits. This court ordered the motion taken with the case.

The record shows that the trial court, after its ruling dismissing Zannini's complaint, permitted Zannini to file the depositions over the objections of the board and Jenkins & Boller. Although Zannini included excerpts from the depositions in a memorandum filed in the trial court, it is clear from the record the trial court did not consider the depositions in ruling on the board's motion to dismiss. Indeed, the only reason that the trial court permitted the depositions to be filed was that it felt they should be made available to this court. The trial court also did not consider the two affidavits, since they were attached to motions filed in this court.

In its brief Zannini relies on the depositions to support its allegation that the board rejected its bid only because it complied with the board's bidding instructions. Zannini also raises a new claim, one not alleged in its complaint. Zannini charges, based upon the depositions, that Legat had a secret policy of rejecting the bid of any contractor who bid on alternate No. 1 and that Jenkins & Boller was the only contractor aware of that policy. Although the central issues in this case relate solely to the pleadings, we adumbrate Zannini's allegations, and because Zannini requests this court to decide the case on the merits, we will summarize the pertinent portions of the deposition testimony.

Bid alternate No. 1 instructed each contractor to state an amount by which it would reduce its base bid if the board deleted the liquidated damages clause from the contract. Zannini inserted a figure of $24,000, and Jenkins & Boller inserted the words "No Bid." Ben White, administrative assistant to the superintendent, testified that the only reason that the board rejected Zannini's bid was because it felt, based upon information provided by Legat, that Zannini could not complete the construction by July 1, 1986. The board reached this conclusion, White stated, based upon the fact that Zannini had bid on alternate No. 1. White stated that the board reached the same conclusion with respect to the other contractors that had bid on alternate No. 1. Wayne Machnich, the president of Legat, testified in his deposition that when a contractor bids on alternate No. 1, it indicates that the contractor cannot complete the project on time, since it reveals what the contractor included in its base bid to cover the penalties it would be assessed if the project was not completed by the specified date. Machnich conceded, though, that the figure could represent an amount that the contractor would have to expend in overtime to complete the job on time. (Leonard Zannini stated in an affidavit—one which the board moved to strike from the record—that the $24,000 he bid on alternate No. 1 was, in fact, the amount budgeted in the base bid for 48 Saturdays of overtime at $500 per day in order to insure completion of

the school by July 1, 1986.) Machnich further testified that by bidding on alternate No. 1, Zannini indicated that it would not complete construction by July 1, 1986. Legat's practice, he said, is to divide the figure in alternate No. 1 by the amount per day of liquidated damages in order to determine "how many days the contractor feels he is going to be late with the project." Machnich stated he informed the board that since Zannini had included a figure of $24,000 toward liquidated damages in its bid, "when July 1st came around, if he was not done, that from that point on for the next 60 days, [the board] would just be trading dollars with [Zannini], and there would be no damages suffered by the contractor and therefore no incentive to finish any sooner than within 60 days of that date." Machnich also testified that there was nothing in the bidding documents which Legat gave to the contractors informing them that a negative inference would be drawn regarding their ability to complete the project on time if they bid a dollar amount in alternate No. 1. Nor was there any custom or usage in the trade, he said, from which a contractor could be expected to draw that conclusion.

Richard Grabowski prepared Jenkins & Boller's bid. Grabowski testified that bidding instruction No. 7A—7 instructed the contractor to fill in all blanks with prices or if not applicable the words "No Bid."

Grabowski said he had previously bid on approximately 10 other Legat jobs. On each occasion the bid forms contained an alternate bid similar to alternate No. 1. He said he always bid zero or no bid because according to his understanding, if a contractor filled in a dollar amount it indicated that the contractor cannot complete the job by the specified date. Grabowski further testified that he did not include a price in alternate No. 1 because Jenkins & Boller's bid did not provide for liquidated damages, and therefore he put in the words "No Bid." Grabowski denied talking to anyone from Legat about the school bid. However, when questioned concerning whether he had ever discussed in general terms the meaning of including a dollar figure in alternate No. 1 with anyone from Legat, Grabowski replied: "I could very well have done that, yes." He went on to testify that at some point over the years, it was "very well possible" that he discussed the meaning of filling in a dollar amount with someone from Legat.

Based upon the foregoing, Zannini alleges that (1) the board rejected its low bid only because Legat interpreted Zannini's bid on alternate No. 1 to mean that Zannini could not complete the project on time; (2) Legat's policy of drawing a negative inference if the contractor filled in a dollar amount in alternate No. 1 was not made known to the contractors and was contrary to the bidding instructions which told

the bidder to fill in a price for each alternate bid; and (3) unlike the other bidders, Jenkins & Boller knew of Legat's secret interpretation.

These issues are presented: (1) Whether Zannini, as an unsuccessful bidder, has standing under section 10—20.21 of the School Code to challenge the board's action in awarding the contract to Jenkins & Boller; (2) Whether Zannini is entitled to judicial review of the board's action by way of an independent action for *mandamus* or common law *certiorari*; (3) Whether Zannini's complaint alleges sufficient facts to state a cause of action; (4) Whether this court should decide the case on the merits; and (5) Whether this court should grant the board's motion to strike the affidavits and depositions from the record on appeal.

The central issue in this case is whether Zannini, as an unsuccessful low bidder, has standing under section 10—20.21 of the School Code to challenge the board's action in awarding the contract to Jenkins & Boller. It is undisputed in this case that Zannini is not a taxpayer of the Hawthorn School District. Section 10—20.21 requires school boards "[t]o let all contracts for supplies, materials or work *** involving an expenditure in excess of $5000 to the lowest responsible bidder after due advertisement ***."

■ As noted in *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 748, where an action is brought alleging a violation of a statute, "the doctrine of standing requires that the plaintiff be one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed." (See also *Cottage-63rd Street Currency Exchange, Inc. v. Callahan* (1982), 104 Ill. App. 3d 586, 589.) Whether Zannini has standing under the School Code to maintain this action depends in large measure on the interpretation to be given this court's decision in *Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880. In that case, the plaintiff glass company was the low bidder on a glass replacement contract for a school in Rockford. Nevertheless, the school board awarded the contract to another glass company. The plaintiff then brought suit against the board under section 10—20.21, seeking a writ of *mandamus* and damages. The plaintiff later filed a motion for a preliminary injunction to stop performance of the contract. The trial court denied the motion for a preliminary injunction and later denied the petition for a writ of *mandamus*.

On appeal, this court noted that since the contract had been fully performed, "there is no longer any way that a court could direct that the contract be assigned to [the plaintiff], by writ of mandamus, or otherwise." (59 Ill. App. 3d 880, 883.) Consequently, the court turned to the only remaining issue: whether the plaintiff was entitled to an

award of money damages. Concluding that section 10—20.21 was enacted for the benefit and protection of taxpayers residing within the school district and not for the benefit of unsuccessful bidders, the court held that the plaintiff could not recover money damages. The statutory purpose would not be served by allowing an unsuccessful bidder to recover damages, we reasoned, because taxpayers would be forced to pay twice whenever a school board awarded a contract to someone who was not the lowest responsible bidder, once through the unjustified additional expenditure on the awarded contract and a second time by paying the lost profits of the aggrieved low bidder. As a result, we found that "section 10—20.21 of the School Code was never intended to create the private remedy that the [plaintiff seeks] by this action." (59 Ill. App. 3d 880, 884.) We went on to reject the plaintiff's claim for damages under section 5 of the mandamus act (now Ill. Rev. Stat. 1983, ch. 110, par. 14—105), noting that section 5 is merely procedural and creates no right to recover damages in and of itself.

■ In this case, the board asserts that *Beaver Glass* is dispositive of the standing issue. It points out that this court unequivocally stated that the purpose of section 10—20.21 was to benefit and protect taxpayers residing within the school district and not to protect unsuccessful bidders. The board also argues it is not necessary to grant standing to unsuccessful bidders in order to effectuate the statutory purpose because suits can be brought by the State's Attorney, Attorney General, or taxpayers residing within the school district. The board further maintains that granting standing to unsuccessful bidders will result in a proliferation of lawsuits which would be contrary to public policy.

Zannini, on the other hand, emphasizes—and the board concedes—that *Beaver Glass* addressed only the question of whether an unsuccessful bidder could maintain an action under the statute for money damages. The decision cannot be read so broadly, it argues, as to preclude all forms of coercive relief. This is particularly true, it maintains, given the language used by this court at the end of the opinion, where we stated:

> "Thus, the [plaintiff] had no entitlement to damages regardless of whether or not the Board acted properly in awarding the glass replacement contract to the higher bidder, *and it is no longer possible for a court to grant coercive relief.*" (Emphasis added.) (59 Ill. App. 3d 880, 885.)

Zannini asserts that the last portion of the above quotation would have been totally unnecessary if the court had intended to preclude all forms of coercive relief.

We cannot agree with the board's assertion that *Beaver Glass* is

dispositive of the standing issue in this case. Limited to its facts, the case simply stands for the proposition that an unsuccessful bidder lacks standing to maintain an action under the School Code for money damages. Our concern there that taxpayers would have to pay twice if unsuccessful bidders were allowed to pursue a cause of action has no application where, as here, the unsuccessful bidder seeks non-monetary relief. Furthermore it is significant that we specifically noted that, inasmuch as the contract had been fully performed, "there is no longer any way that a court could direct that the contract be assigned to [the plaintiff], by writ of mandamus, or otherwise." (59 Ill. App. 3d 880, 883.) *Beaver Glass,* by itself, cannot serve as the basis for denying Zannini standing in this case. The court addressed the standing issue raised here in *Cardinal Glass Co. v. Board of Education* (1983), 113 Ill. App. 3d 442. In *Cardinal Glass,* the plaintiff glass company filed a *mandamus* action alleging that the school board violated section 10—20.21 when it awarded a window replacement contract to a higher bidder. The plaintiff also filed a motion for a preliminary injunction. The trial court denied the motion for a preliminary injunction and subsequently, relying primarily on *Beaver Glass,* entered judgment on the pleadings in favor of the school board on the ground that the plaintiff lacked standing to challenge the board's action. The appellate court reversed, holding that an unsuccessful bidder has standing under the School Code to maintain a *mandamus* action. Referring to *Beaver Glass,* the court noted that a principal purpose of the statute is to protect taxpayers residing within the school district. The court also found, however, that the statute contained provisions designed to directly benefit and protect bidders. The statute requires bids to be publicly advertised; the bids must be sealed; and the bidders must receive advance notice of the time and place of the public meeting where the bids are to be opened and announced. Thus, the court reasoned:

> "These measures, while inuring indirectly to the benefit of the taxpayers by providing for competitive bidding, also directly benefit and protect the bidders themselves. The duty to award the contract to the lowest responsible bidder is owed both to the taxpaying public and to the bidders, who are made an integral part of the statutory scheme. As a practical matter, securing compliance with the statute, and thereby the benefits to taxpayers, will be more effectively handled by unsuccessful bidders, who for the most part have a greater stake in such matters, and greater resources, than an individual taxpayer. In the long run, permitting such suits by bidders will work to advance the public interest behind the statute by securing the goal of tax savings.

In an individual case, it may have the effect of causing additional expenditure by a board which has violated the statute (see *Beaver Glass & Mirror Co. v. Board of Education* (1978), 59 Ill. App. 3d 880, 884), but in a broader picture, giving standing to the bidders where the statute has been violated will advance the object of the statute." 113 Ill. App. 3d 442, 446-47.

We believe the reasoning of *Cardinal Glass* is sound and applicable to this case. The board admits that *"Cardinal Glass* is correct that bidders are part of the statutory scheme envisioned by the School Code" but argues, based upon this court's decision in *Cook v. Optimum/Ideal Managers, Inc.* (1984), 130 Ill. App. 3d 180, that such participation is not determinative. One of the issues addressed in *Cook* was whether the plaintiff employee had an implied cause of action under the Workers' Compensation Act against the employer's insurance adjuster for retaliatory termination of payments due under the act and for the adjuster's refusal to furnish certain information. Although the court found that the plaintiff was within the group the statute was designed to protect, it refused to recognize an implied cause of action, noting that the Workers' Compensation Act itself provided numerous remedies. (130 Ill. App. 3d 180, 186-87.) The same cannot be said in the instant case for the School Code contains no remedy for an unsuccessful bidder who alleges a violation of section 10—20.21. Instead reliance must be placed on public prosecutors or individual taxpayers. It is, however, unrealistic to expect the State's Attorney or Attorney General, no matter how vigorous a public official, to challenge every improper act by a school board in awarding a contract to one who is not the lowest responsible bidder. (See *Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App., 3d 595, 597.) Nor is it reasonable to assume that individual taxpayers, with only limited means, can effectively insure compliance with the statutory requirements. As the court observed in *Cardinal Glass,* securing compliance with the statute will, as a practical matter, best be served by granting standing to unsuccessful bidders. 113 Ill. App. 3d 442, 447.

Other courts have recognized the right of an unsuccessful bidder to maintain a cause of action under a competitive bidding statute similar to the one involved here. In *Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, the court held that the plaintiff had standing under the Illinois Municipal Code to pursue a declaratory judgment action after the city awarded a maintenance contract to another bidder. In *State Mechanical Contractors, Inc. v. Village of Pleasant Hill* (1985), 132 Ill. App. 3d 1027, the court, although denying the plaintiff's claim for loss of profits, held that the plaintiff had standing

under the Illinois Municipal Code to maintain an action to recover the expenses incurred in preparing and presenting its bid.

We find that Zannini has standing to establish a cause of action under section 10—20.21 of the School Code. Because we determine Zannini has standing to prosecute this action under the School Code, it is not necessary to determine whether Zannini is entitled to pursue an independent action for *mandamus* or *certiorari*.

The next issue is whether the trial court erred in finding that Zannini's complaint alleged sufficient facts to state a cause of action. The board charges that the complaint fails to allege ultimate facts but instead contains only unsubstantiated conclusions and allegations based upon information and belief. Consequently, it argues the complaint is legally insufficient and should have been stricken. The board's argument is completely without merit.

■ Pleadings are to be liberally construed. (Ill. Rev. Stat. 1983, ch. 110, par. 2—603(c).) It is, of course, essential that the complaint allege facts; mere conclusions are insufficient to state a cause of action. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426.) However, conclusional statements which are supported by specific factual allegations are sufficient to withstand a motion to dismiss. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426; *Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 160.) Moreover, the cause of action should not be dismissed unless it clearly appears that no set of facts could be proven which would entitle the plaintiff to relief. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187.) Nor will a complaint be dismissed "if facts essential to its claim appear by reasonable implication and it reasonably informs the defendants of a valid claim under a general class of cases." *Brumley v. Touche Ross & Co.* (1984), 123 Ill. App. 3d 636, 638; *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1031.

■ Applying these principles to the complaint in this case, the trial court did not err in denying the board's motion to strike. Zannini's verified complaint first described the bidding process and then alleged that Zannini was the low bidder. The complaint then set forth the applicable provisions of the School Code and the specific reasons the board gave for rejecting Zannini's bid, based upon what the board's representatives told Zannini. The complaint further alleged that the board's refusal to award the contract to Zannini was not "legally sufficient" and described in detail the reasons supporting this allegation, including reference to the pertinent portions of the bidding instructions which were attached as exhibits to the complaint. The

complaint also alleged, based upon "information and belief," that Jenkins & Boller was a local contractor and that it was awarded the contract on the basis of favoritism. The complaint concluded by alleging that the board's action was arbitrary and capricious; that Zannini was the lowest responsible bidder; that by awarding the contract to Jenkins & Boller the board violated section 10—20.21 of the School Code; that the board's failure to award the contract to Zannini would result in a loss to the taxpayers of $8,000 and would deprive Zannini of substantial profits it would otherwise earn; and that Zannini's remedy at law was inadequate.

While it is true that the complaint contains a number of conclusional statements, viewing the complaint as a whole (*Wolcowicz v. Intercraft Industries Corp.* (1985), 133 Ill. App. 3d 157, 160), it cannot reasonably be said that it fails to contain sufficient facts to state a cause of action. The board argues that the complaint contained only a broad conclusional allegation of favoritism, based merely on information and belief. Yet, the claim of favoritism was but one paragraph of a 27-paragraph complaint, and it can hardly be said that the entire complaint should have been stricken for this reason (*Stanley Magic-Door, Inc. v. City of Chicago* (1979), 74 Ill. App. 3d 595, 598), particularly since the crux of Zannini's allegations was that the board refused to award it the contract solely because Zannini complied with the board's own bidding instructions. Accordingly, we affirm that portion of the trial court's order denying the board's motion to strike.

■ The last issue to be decided is whether this court should decide the case on the merits. Stated briefly, Zannini argues that this court has authority under Supreme Court Rule 366(a) (87 Ill. 2d R. 366(a)) to decide the merits of the case. Rule 366(a) provides in pertinent part:

"(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,

(1) exercise all or any of the powers of amendment of the trial court;
* * *
(3) order or permit the record to be amended by correcting errors or by adding matters that should have been included;

(4) draw inferences of fact; and

(5) enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require."

Assuming, *arguendo,* that this court has authority under Supreme Court Rule 366(a) to decide the merits of the case, it would be highly improper for the court to do so. Because the issues below were di-

rected solely at the pleadings, the trial court did not address the merits of Zannini's claim for declaratory and injunctive relief. Zannini, in effect, requests this court to enter summary judgment in its favor and grant it a permanent injunction. Zannini asserts that the facts in this case are undisputed—a point vigorously contested by the board and Jenkins & Boller—and establish that the board as a matter of law violated the School Code by awarding the contract to Jenkins & Boller. This assertion is based on the discovery depositions that the trial court permitted Zannini to file over the objections of the board and Jenkins & Boller after the court had ruled on the board's motion to dismiss. The record clearly shows that the trial court did not consider the depositions in ruling on the board's motion. Indeed, when Zannini attempted to summarize the deposition testimony, the trial court sustained the board's objection, noting that it was only deciding whether a hearing or trial should be held. Given that the issues which Zannini asks this court to resolve were not litigated in the trial court and that neither the board nor Jenkins & Boller has had an opportunity to present any evidence, we believe it would be an abuse of discretion for this court to decide the case on the merits.

We remand the cause to the trial court for further proceedings, and we therefore find it unnecessary to decide the board's motion to strike the affidavits and depositions from the record on appeal.

Zannini has requested we order the clerk of the court to issue a mandate immediately without the customary 21-day waiting period (87 Ill. 2d R. 367(a)). We grant that request.

To summarize our decision we (1) reverse the portion of the trial court's August 9, 1985, order holding that Zannini lacks standing under the School Code to maintain a cause of action; (2) affirm the portion of the order denying the board's motion to strike Zannini's complaint for failure to state a cause of action; and (3) remand the cause to the trial court for further proceedings.

Reversed in part; affirmed in part, and remanded.

LINDBERG and SCHNAKE, JJ., concur.