537 S.E.2d 299

Edward D. SLOAN, Jr., individually, and as a Citizen, Resident, Taxpayer and Registered Elector of Greenville County, and on behalf of all others similarly situated, Appellant,

v.

The SCHOOL DISTRICT OF GREENVILLE COUNTY, South Carolina, an Agency of the State of South Carolina, J. Coleman Shouse, Vivian Richardson, Debra Bush, Margaret Burch, Ralph Chandler, Marilyn Hendrix, Valerie Hollinger, Roger Meek, Tommie Reece, William Renninger, Leola Robinson, and Ann Southerlin, Respondents.

No. 3238.

Court of Appeals of South Carolina.

Heard April 12, 2000.
Decided Aug. 21, 2000.

James G. Carpenter and Jennifer J. Horton, both of James G. Carpenter, PC, of Greenville, for appellant.

N. Ward Lambert, of The Harper Law Firm, of Greenville, for respondents.

CONNOR, Judge:

Edward D. Sloan, Jr., individually, and as a citizen, resident, taxpayer, and registered elector of Greenville County, and on behalf of all others similarly situated, brought this declaratory judgment action against the School District of Greenville County and the individual members of the District board. Sloan requested a declaration that certain contracts entered

into by the District were *ultra vires* to the District's procurement code, invalid, and illegal. Sloan also asked the court to enjoin performance and payment of the illegal contracts. The trial court granted the District's motion to dismiss, finding Sloan lacked standing to contest the District's actions. It also found Sloan had no implied right of action under the District's procurement code. Sloan appeals. We reverse and remand.

## FACTS

The District awards contracts amounting to $25,000 or more through competitive sealed bidding under its procurement code.[1] That code provides an emergency procurement may be made when an emergency condition arises and the need cannot be met through normal procurement methods. The code limits such procurement to "when there exists an immediate threat to public health, welfare, critical economy and efficiency, or safety under emergency conditions as defined in regulation." The District's applicable regulation provides examples of such emergency conditions, including floods, epidemics, riots, equipment failures, and fire loss. The regulation also requires the condition "must create an immediate and serious need for supplies, services, equipment, or construction[,] ... the lack of which would seriously threaten: (1) the functioning of the District; (2) the preservation or protection of property; or (3) the health or safety of any person." The emergency procurement is to "be made with as much competition as is practicable under the circumstances."

On February 23, 1998, the District decided to procure construction contracts for three schools under the emergency exception to its competitive sealed bid procedure. It justified the need for the emergency procurement by asserting it would assure completion of the construction prior to school opening in August 1999, as required by the "Long–Range Facilities Plan." Eston Skinner, a purchasing agent in the District's procurement office spoke to Larry Sorrell, the Manager of Audit and Certification for the State Budget and Control

---

1. The District is exempt from the provisions of the South Carolina Consolidated Procurement Code, pursuant to S.C.Code Ann. § 11–35–70 (Supp.1999), as it has adopted its own procurement code and its procedures have been approved by the Office of General Services.

Board, to get his input. Sorrel advised the District had the option of doing an emergency procurement, but warned the District would be cited in the procurement department's audit for not starting the project in time to allow for a normal bidding procedure. He also advised that a disenchanted contractor or other aggrieved party could protest the emergency procurement. The District's procurement code allows determinations under the emergency exception to be challenged if "they are clearly erroneous, arbitrary, capricious or contrary to law."

The District invited contractors to submit fee proposals for the construction of the three middle school projects. After reviewing the proposals, the District awarded the contracts to Beers–York Construction Company, Inc. for construction of all three schools. Construction of the schools began soon thereafter.

Sloan brought this declaratory judgment action challenging the award of the contracts. He conceded he did not try to bid on the project. Instead, he asserted he was a taxpayer. contesting an illegal expenditure. Relying on *Citizens for Lee County, Inc. v. Lee County*, 308 S.C. 23, 416 S.E.2d 641 (1992), the trial court found Sloan did not having standing in this case. As an alternate ground for dismissal, the court held Sloan did not have an implied right of action under the District's procurement code.

## TAXPAYER STANDING

Sloan argues the trial court erred in holding he lacked standing to challenge the District's award of the contracts.

A fundamental prerequisite to institute an action is the requirement that the plaintiff have standing. *Blandon v. Coleman*, 285 S.C. 472, 330 S.E.2d 298 (1985). "Standing is 'a personal stake in the subject matter of a lawsuit.'" *Newman v. Richland County Hist. Preserv. Com'n*, 325 S.C. 79, 82, 480 S.E.2d 72, 74 (1997) (quoting *Bailey v. Bailey*, 312 S.C. 454, 458, 441 S.E.2d 325, 327 (1994)). In *Florence Morning News, Inc. v. Building Comm'n*, 265 S.C. 389, 218 S.E.2d 881 (1975), the South Carolina Supreme Court held:

A **private person** may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in danger of sustaining, prejudice therefrom. '(I)t is not sufficient that he has merely a general interest common to all **members of the public.**'

*Id.* at 398, 218 S.E.2d at 884–85 (emphasis added) (quoting *Ex parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937)). Deciding the plaintiffs in *Florence Morning News* lacked standing, the Supreme Court specifically noted they did not "sue as taxpayers." *Id.* at 398, 218 S.E.2d at 885.

In the case at bar, Sloan is not maintaining this action as a "private person," nor is he maintaining it merely as a "member of the public." Sloan has pursued this action as a taxpayer of Greenville County.

In *Mauldin v. City Council,* 33 S.C. 1, 11 S.E. 434 (1890), the South Carolina Supreme Court examined the issue of taxpayer standing.[2] In *Mauldin,* taxpayers challenged the purchase of an electric plant by the city council as *ultra vires,* claiming the purchase increased their tax burden. *Id.* at 15, 11 S.E. at 434. The Court explained how taxpayers differ from other members of the general public and how taxpayers suffer harm from *ultra vires* acts. *Id.* at 18–21, 11 S.E. at 435–36. The *Mauldin* court stated:

"The injury charged as the result of the acts complained of is a private injury in which the tax-payers of the county ... are the individual sufferers, rather than the public. The people out of the county bear no part of the burden; nor do the people within the county, except the tax-payers, bear any part of it. It is therefore an injury peculiar to one class of persons, namely the tax-payers of the county ...."

*Id.* at 20, 11 S.E. at 436 (quoting *Newmeyer v. Missouri & Miss. R.R. Co.,* 52 Mo. 81 (1873)). The Court held the taxpayers were "not the whole public, but comparatively a small part of it." *Id.* at 18, 11 S.E. at 435. The taxpayers

---

**2.** In *Mauldin,* the Supreme Court held that operation of certain utilities by cities and towns would be *ultra vires.* After *Mauldin,* the South Carolina Constitution was amended to allow cities and towns to operate water systems. *See Berry v. Weeks,* 279 S.C. 543, 309 S.E.2d 744 (1983) (explaining history of constitutional provisions relating to waterworks).

"constitute a class specially damaged by the alleged unlawful act," and therefore have "a special interest in the subject-matter of the suit, distinct from that of the general public." *Id.* at 19, 11 S.E. at 436 (quoting *Mayor and City Council of Baltimore v. Gill,* 31 Md. 375, 394 (1869)).

A taxpayer's standing to challenge unauthorized or illegal governmental acts has been repeatedly recognized in South Carolina. In *Sligh v. Bowers,* 62 S.C. 409, 40 S.E. 885 (1902), taxpayers of a school district challenged the school district's plan to relocate a school building. The taxpayers alleged "all expenditures of the public money [on the new school] are without lawful authority." *Id.* at 411, 40 S.E. at 886. The taxpayers' standing to challenge the allegedly illegal expenditures was not in question, but the South Carolina Supreme Court, quoting the United States Supreme Court, held:

> This is an unlawful use of the public funds, which the court, in the exercise of its equitable powers, will enjoin. In *Crampton v. Zabriskie,* Mr. Justice Field used this language: "Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county ... there is at this day no serious question."

*Id.* at 413, 40 S.E. at 887 (citation omitted) (quoting *Crampton v. Zabriskie,* 101 U.S. 601, 609, 25 L.Ed. 1070 (1879) [3]).

In *Kirk v. Clark,* 191 S.C. 205, 4 S.E.2d 13 (1939), a bondholder sued the County Board of Commissioners and the Treasurer of Chesterfield County to enjoin the misapplication and diversion of tax funds collected for the payment of his bonds. Although the plaintiff had standing as a bondholder, the South Carolina Supreme Court stated, "The principle is firmly settled in this State that a taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out public money for purposes unauthorized by law." *Id.* at 210, 4 S.E.2d at 15.

In *Brown v. Wingard,* 285 S.C. 478, 330 S.E.2d 301 (1985), the plaintiff taxpayers sued the Mayor and City Council of

---

3. Recently, in *United States v. City of New York,* 972 F.2d 464 (2nd Cir.1992), the court stated, "[M]unicipal taxpayer standing has ancient roots in our jurisprudence." *Id.* at 470 (citing *Crampton,* 101 U.S. at 609).

Greenwood for illegally reimbursing expenses incurred at a convention. The defendants questioned the taxpayers' standing to bring the action. Holding the taxpayers had standing, the Supreme Court confirmed that taxpayers "have an interest in seeing that city officials disburse funds in a lawful manner." *Id.* at 480, 330 S.E.2d at 302.

Although South Carolina has allowed taxpayer standing in other contexts, we have not been confronted with a case wherein a taxpayer challenges a violation of a statute requiring competitive bidding in the award of governmental contracts. However, other states have addressed this issue and held taxpayers have standing because competitive bidding laws are for the benefit of taxpayers. *Independent Enters. Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1178 (3rd Cir.1997) ("Statutes requiring the award of public contracts to the lowest bidder exist solely for the benefit of taxpayers, and only taxpayers suffer a legally cognizable injury from a violation of the statute that entitles them to bring suit."); *United States v. City of New York*, 972 F.2d 464 (2nd Cir.1992) (holding taxpayer had standing to challenge legality of contracts awarded in violation of competitive bidding requirement); *Browning–Ferris, Inc. v. Manchester Borough*, 936 F.Supp. 241, 244 (M.D.Pa.1996) ("[A]n action to enjoin a municipality from awarding a contract to any but the lowest responsible bidder may be brought only by a taxpayer of the municipality which has created the governmental entity awarding the contract ...."); *Lawrence Brunoli, Inc. v. Town of Branford*, 247 Conn. 407, 722 A.2d 271, 274 (1999) ("This court has long maintained that '[m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders; they should be construed to accomplish these purposes fairly and reasonably with sole reference to the public interest.' ") (quoting *John J. Brennan Constr. Corp. v. City of Shelton*, 187 Conn. 695, 448 A.2d 180, 184 (1982)); *Beaver Glass & Mirror Co. v. Board of Educ.*, 59 Ill.App.3d 880, 17 Ill.Dec. 378, 376 N.E.2d 377, 380 (1978) (holding unsuccessful bidder did not have standing because competitive bidding "statute was enacted for the benefit and protection of taxpayers"); *Alliance for Affordable Energy v.*

*Council of New Orleans,* 677 So.2d 424 (La.1996) (holding taxpayers had standing to challenge authority of city council to exempt certain public contracts from competitive bidding statute); *Eastern Missouri Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 46 (Mo.1989) (holding taxpayers had standing to challenge county contracts awarded without competitive bidding and explaining, "The primary basis for taxpayer suits arises from the need to ensure that governmental officials conform to the law. It rests upon the indispensable need to keep public corporations, their officers, agents and servants strictly within the limits of their obligations and faithful to the service of the citizens and taxpayers." (citation omitted)); *National Waste Recyc., Inc. v. Middlesex County Improv. Auth.,* 150 N.J. 209, 695 A.2d 1381, 1387 (1997) ("Public bidding statutes exist for the benefit of taxpayers, not bidders, and should be construed with sole reference to the public good."); *Dick Enters., Inc. v. Metropolitan/King County,* 83 Wash.App. 566, 922 P.2d 184, 185 (1996) ("Competitive bidding statutes exist to protect the public purse from the high costs of official fraud or collusion.").

The taxpayers of Greenville County have a direct interest in the proper use and allocation of tax receipts by the District. Therefore, we find Sloan, as a taxpayer of Greenville County, has standing to challenge the District's award of the allegedly illegal contracts due to the District's failure to abide by the competitive sealed bidding requirements in its procurement code.

## PUBLIC IMPORTANCE

Our decision to allow Sloan to proceed with this suit does not rest entirely on his status as a taxpayer of Greenville County. Recently, in *Baird v. Charleston County,* 333 S.C. 519, 511 S.E.2d 69 (1999), the Supreme Court held "a court may confer standing upon a party when an issue is of such public importance as to require its resolution for future guidance." *Id.* at 531, 511 S.E.2d at 75. In *Baird,* the plaintiffs alleged Charleston County committed an *ultra vires* act by exceeding its statutory authority to issue hospital bonds. The Court explained the case impacted a profound public interest—the public health and welfare—and stated the citizens of Charleston County "have a significant interest in ensuring

that their county acts within the legal parameters established by the legislature for funding hospital development." *Id.* Accordingly, the Supreme Court held the plaintiffs had standing to proceed. *Id.* at 531, 511 S.E.2d at 75–76.

In this case, the public interest involved is the prevention of the unlawful expenditure of money raised by taxation. "Public policy demands a system of checks and balances whereby taxpayers can hold public officials accountable for their acts.... Taxpayers must have some mechanism of enforcing the law." *Eastern Missouri Laborers Dist. Council,* 781 S.W.2d at 47.

Although the District adopted its own procurement code, the General Assembly's intent is relevant when examining the public policy of competitive sealed bidding in the award of public contracts. The General Assembly stated its intent as follows:

> Section 2. It is the intent of the General Assembly to ensure that the heads of state agencies, departments, and institutions are held accountable for the effective and efficient use of the public resources entrusted to them annually in the appropriation process.

Act No. 178, 1993 S.C. Acts 1367.

As required by law, the language used in the District's procurement code is "substantially similar" to the General Assembly's expression of intent. S.C.Code Ann. § 11–35–70 (Supp.1999) (requiring school districts' procurement codes to be "substantially similar" to the South Carolina Consolidated Procurement Code). In particular, it states:

> The underlying purposes and policies of this code are:
>
> 1. to provide increased economy in procurement activities and to maximize to the fullest extent practicable the purchasing values of funds of the District;
>
> . . .
>
> 9. to promote increased public confidence in the procedure followed in public procurement

The General Assembly's intent and the District's purposes are equivalent. Both manifest the desire to ensure continued public trust and confidence in governmental spending.

The expenditure of public funds pursuant to a competitive bidding statute is of immense public importance. Requiring that contracts only be awarded through the process of competitive sealed bidding demonstrates the lengths to which our government believes it should go to maintain the public's trust and confidence in governmental management of public funds. The integrity of the competitive sealed bidding process is so important that in some states "once a contract is proved to have been awarded without the required competitive bidding, a waste of public funds [is] presumed . . . without showing that the municipality suffered any alleged injury." 18 Eugene McQuillin, *The Law of Municipal Corporations* § 52.26 (3d ed.1993); *see* 5 Sandra M. Stevenson, *Antieau on Local Government Law* § 73.04[11] (2d ed.1999) (stating that where a bid statute has been disregarded, injury to taxpayers is almost conclusively presumed). The Missouri Supreme Court went a step further and held, "Even though an expenditure might produce a net gain, if the expenditure is not contemplated by the enabling legislation, it is illegal and should be enjoined." *Eastern Missouri Laborers Dist. Council,* 781 S.W.2d at 47.

■ The requirement of standing "is not an inflexible one." *Thompson v. South Carolina Comm'n on Alcohol & Drug Abuse,* 267 S.C. 463, 467, 229 S.E.2d 718, 719 (1976). Accordingly, in addition to Sloan's standing as a taxpayer, we find the issues involved "are of such wide concern" that this declaratory judgment action should be decided for future guidance in the expenditure of public funds pursuant to competitive sealed bidding requirements. *Id.; Baird,* 333 S.C. at 531, 511 S.E.2d at 75; *Gilstrap v. South Carolina Budget & Control Bd.,* 310 S.C. 210, 213, 423 S.E.2d 101, 103 (1992) ("[T]he questions involved here are of such wide concern that the rules on standing will not be inflexibly applied.").

## TRIAL COURT'S RELIANCE ON *CITIZENS FOR LEE COUNTY v. LEE COUNTY*

The trial court relied on *Citizens for Lee County, Inc. v. Lee County,* 308 S.C. 23, 416 S.E.2d 641 (1992), in which the Supreme Court found a special-interest group and two citizens did not have an implied right of action under the procurement code. The Court also held the plaintiffs lacked standing to

maintain a suit under the procurement code because their interest or the inurement of any alleged prejudice to them was indistinguishable from that of other members of the general public. *Citizens for Lee County,* 308 S.C. at 28–29, 416 S.E.2d at 645.

The trial court's reliance on *Citizens for Lee County* was misplaced and is inapposite for the following reasons. First, Sloan's declaratory judgment action involves an allegedly illegal expenditure of public funds by the District. In *Citizens for Lee County,* an expenditure of public funds was not at issue. Instead, the issue was a lease agreement between Lee County and a private corporation to maintain a solid waste disposal facility on county property. This lease agreement did not involve the expenditure of public funds by Lee County.

Second, Sloan is maintaining this action as a taxpayer. In *Citizens for Lee County,* there is no mention of the plaintiffs' status as taxpayers and the Supreme Court did not rule on that issue. The Supreme Court identified the plaintiffs as "a special-interest group and two private citizens." *Id.* at 28, 416 S.E.2d at 645 (emphasis added). The Supreme Court addressed the plaintiffs' standing only in the context that the plaintiffs were private parties whose interests were "indistinguishable from that of other members of the general public." *Id.* at 29, 416 S.E.2d at 645.

*Citizens for Lee County* stands for the proposition that a procurement code does not create an implied right of action for special-interest groups and private citizens who do not have "a direct, intrinsic interest in the procurement practices of governmental entities." *Id.* As explained above, competitive sealed bidding requirements are principally for the benefit of taxpayers to ensure their money is spent wisely. As a taxpayer, Sloan has "a direct, intrinsic interest in the procurement practices" of the District, and therefore, he has an implied right of action under the District's procurement code.

 We also must consider whether Sloan has stated a sufficient cause of action under the Declaratory Judgment Act. When bringing an action under the Declaratory Judgment Act, "[a]ll that is required is that the [plaintiff] demonstrate a justiciable controversy." *Brown v. Wingard,* 285 S.C. 478, 479, 330 S.E.2d 301, 302 (1985). Sloan's allegations of expen-

ditures by the District in violation of the competitive sealed bidding requirement demonstrate a justiciable controversy.

For the foregoing reasons, we find the trial court erred in holding Sloan lacked standing to pursue this declaratory judgment action.

REVERSED AND REMANDED.

GOOLSBY and HOWARD, JJ., concur.